## FLUHMAN et ux. v. MATTHEWSON.
### (No. 3314.)

Court of Civil Appeals of Texas. Amarillo.
Jan. 29, 1930.

Rehearing Denied Feb. 19, 1930.

Berry, Stokes, Warlick & Gossett, of Vernon, and Fitzgerald & Hatchitt, of Wichita Falls, for appellants.

Storey, Leak & Storey, of Vernon, for appellee.

RANDOLPH, J. This suit was filed by Matthewson as plaintiff, against Fritz Fluhman and his wife, Anna Fluhman, as defendants. Judgment for plaintiff, from which the defendants have appealed.

The plaintiff's first amended original petition alleges as cause of action substantial-

ly as follows: That on the 5th day of November, 1924, the defendant Fritz Fluhman, joined by his wife, Anna Fluhman, the latter being now deceased, for a valuable consideration made, executed, and delivered to the plaintiff a certain oil and gas lease on four tracts of land situated in the county of Wilbarger (describing the lands by metes and bounds), which four tracts are alleged to aggregate 200 acres more or less, and further alleging the filing and recording of such lease; that thereafter assignments were made of said lease to divers individuals, except as to the fourth tract described as 36.6 acres of land, the title of which remained in the plaintiff, and which 36.6 acres was out of the north part of said 200-acre lease; that the terms and conditions of said oil and gas lease were fully complied with, rentals paid, and drilling obligations carried on so as to perpetuate said lease on said 36.6-acre tract to the 26th day of February, 1926, at which time said lease was in full force and effect; that on or prior to February 26, 1926, the defendants were the owners of other lands in that vicinity which had not been leased for oil and gas, and said defendants, on or about said date, represented to plaintiff that if he would release the oil and gas lease held by him on the 36.6-acre tract of land and assist them in procuring releases on said original 200-acre tract, except as to two 40-acre tracts, one held by the Gulf people and the other held by the Atlantic people, they would, as a consideration therefor, execute to plaintiff an oil and gas lease on a 20-acre tract of land on the other lands they owned in Wilbarger county, being out of the south, 160 acres of the west one-half of section 30, Block 9, Houston & Texas Central Railway Company surveys in Wilbarger county, which 20 acres was to be adjacent to and immediately north of the 36.6-acre tract aforementioned, running from east to west and extending far enough north to include 20 acres without taking in any of the improvements immediately surrounding defendants' residence, which 20-acre lease was to be a commercial oil and gas lease covering a term of three years. Further, that relying upon said representations on the part of the defendants to execute to plaintiff an oil and gas lease on the 20 acres aforesaid, this plaintiff, on February 26, 1926, without consideration, made, executed, and delivered to said defendants a release of the oil and gas lease which he then held on said 36.6-acre tract, which release was accepted by said defendants and filed for record in the deed records of Wilbarger county; that said defendants and each of them, after securing said release, wholly failed and refused to deliver to this plaintiff an oil and gas lease on said additional land, as they had promised and agreed, but in violation of their agreement, on or about August 7, 1926, defendants executed to John F. Merrick an oil and gas lease on the identical land upon which they had agreed to execute to this plaintiff an oil and gas lease; that the release by this plaintiff of his oil and gas lease on said 36.6-acre tract was therefore without consideration and of no force and effect.

Plaintiff further alleges that the plaintiff, in drilling and causing to be drilled a well on the 200 acres covered by the original lease, encountered an oil sand with every indication of being very productive of oil in paying quantities; that this was encountered on or about the month of August, 1925, and within the course of some two or three months thereafter and before all the drilling material used in the drilling of said well had been removed and while said lease was still in full force and effect, the defendants, both of whom were aware of said oil sand which had been discovered by plaintiff's efforts, wanted another well drilled and began negotiations with another party for such purpose, but the party with whom they were dealing requested, as a part of the consideration for the drilling of said new well, as much of the original 200 acres theretofore leased to the plaintiff which is covered in the original lease and as was then available, including the 36.6 acres then held by the plaintiff; that during the fall of 1925, some time in October or November, the plaintiff was called to the residence of the defendants, and the said party with whom they were negotiating for another well, to wit, John F. Merrick, was also there; that the defendants proposed to the plaintiff that if he would release his lease on said 36.6 acres, which was then a valuable and outstanding lease, and secure releases of the balance of the 200 acres available, save and except the two 40-acre leases held by the Gulf and Atlantic people, so that they might be able to make a new drilling contract with the said Merrick, at as early a date as practical, they (the defendants), then and there knowing that, if the said plaintiff gave up his 36.6-acre lease and agreed to accept the 20-acre lease north of same so that a new well might be started, it would be very material to them and of great benefit for them to have further development on said 200-acre original lease, and the said plaintiff knew if he surrendered and released his 36.6-acre lease and accepted a new lease on the 20 acres right north of it that by the drilling of a new well by the said Merrick on the said 36.6-acre lease or near same, which was less than one-half mile from where plaintiff and his associates had discovered oil on said original 200-acre lease, it would necessarily enhance the value of said 20-acre lease, the said plaintiff agreed to accept de-

fendants' proposition, and in furtherance thereof plaintiff immediately began to make efforts to procure as many releases as he could of the original 200-acre lease, except the two tracts hereinbefore mentioned and employed counsel to procure them and spent much time himself, and finally, about the latter part of February, 1926, he released to the defendants his 36.6-acre lease and about that time delivered and caused to be delivered to said defendants his release as well as some three or four releases he had procured covering part of the 200-acre lease, all of which were accepted by the defendants and duly placed of record; that at the time he delivered to the defendants the release of his 36.6-acre lease, the said defendants reiterated the contract to the plaintiff whereby they were to give this plaintiff a new lease of the 20 acres; that the plaintiff's lease, under the circumstances at that time, was very valuable and but for the promises, agreements, representations and statements of the defendants aforesaid, which induced him to release same in consideration that said 20-acre lease would be made to him by them, upon all of which he relied, he would not have released the 36.6 acres aforesaid, and said defendants procured said release and said other releases by reason of said statements, promises, and representations that they would make the plaintiff a lease on said 20 acres.

Plaintiff further alleges that at the time the defendants made the promises, statements, representations, and agreements with him at their said home, and at the time the defendants renewed their said promises and agreements when plaintiff delivered to them the release on the 36.6-acre tract, the defendants did not intend to make and deliver to the plaintiff the 20-acre lease, and that defendants made said statements, promises and representations with no intention of carrying them out; that such representations and conduct of the defendants was a fraud practiced upon plaintiff to defraud and cheat him out of said 36.6-acre lease, etc.

That the defendants, without the knowledge and authority of the plaintiff, sold, transferred, and delivered a lease on said 20-acre lease this plaintiff was to have, to other and different persons, and further alleges a continuance thereafter of such representations, etc., by the defendants, after they had disposed of said 20 acres as above stated. Plaintiff then alleges a damage to him in the sum of $200,000, which damage is alleged to have been proximately caused by the fraud perpetrated upon him by the defendants. Plaintiff further pleads the benefits received by the defendants, and that the plaintiff cannot now enforce specific performance of the verbal contract to make him a lease because of the sale of said 20 acres as above stated.

Plaintiff's prayer is as follows:

"Wherefore, premises considered, the defendants having already answered herein, this plaintiff prays that he have judgment against the defendant Fritz Fluhman, his wife, Anna Fluhman, having died since suit was filed and notice to that effect is filed herein, for the sum of Two Hundred Thousand ($200,000.00) Dollars, and legal interest from December 1, 1926, that being the reasonable cash market value of the lease on the 36.6 acre lease which plaintiff was caused to release by reason of the facts aforementioned, at the time defendants Fritz Fluhman and wife refused to make the lease on the 20 acres, or if plaintiff should be held not entitled to recover the value aforesaid of said lease at that time, then he says that the reasonable cash market value thereof of said 36.6 acres at the time of this trial is $80,000.00, and in such event he prays for judgment for said $80,000.00, and legal interest from December 1, 1926, or, in the alternative, should it be held that plaintiff's damage is based upon the 20 acres which defendants Fritz Fluhman and wife agreed to convey to him, then he states that the reasonable cash market value of said 20 acre lease at the time defendants refused to make, execute and deliver said lease to him was $60,000.00, and in such event he prays judgment for $60,000.00 and legal interest from December 1, 1926, against defendant Fritz Fluhman, and should plaintiff be held not entitled to recover the value of same at that time, then he says that the reasonable cash market value of said 20 acre lease at the time of the trial is $40,000.00, and in such event he prays for judgment for said $40,000.00, and legal interest from that date, December 1, 1926, against the defendant Fritz Fluhman, for costs of suit, and all proper relief to which he may show himself entitled in law or in equity."

Defendants filed their answer, which is not necessary for us to discuss or to set out, as, in our view of the case, the questions to be decided are presented by the action of the trial court in overruling the defendants'. general and special demurrer and also in the rendition of the judgment in favor of the plaintiff in the amount for which it was rendered.

The plaintiff filed his third supplemental petition in reply to the defendants' fourth amended original answer, which supplemental petition is, in the main part, a repleading of the first amended petition.

The evidence substantially supports the allegations of the petition, and shows that the contract for the breach of which the damages herein are sought to be recovered was verbal and not in writing; that the plaintiff did not take possession of the 20-acre leasehold, nor was it contemplated that

he should; that the consideration was discharged by plaintiff, but no improvements were erected or placed on the land.

The defendants, appellants, present the questions:

(1) That the petition does not aver facts which confer a good cause of action in plaintiff's favor against the defendants, "Because a parol contract to convey an interest, the consideration only having been paid, and no possession taken of the real estate and no valuable and permanent improvements having been made on same and no change of position of vendee to his detriment, such as would work a fraud or an estoppel against the vendor," such contract cannot be enforced under the statute of frauds of this state.

(2) That the averments set out in the amended original petition in this cause in paragraphs 8, 9, 10, and 11, wherein it is sought to charge fraud, manifestly for the purpose of taking the parol agreement to convey an interest in real estate out from under the statute of frauds, were wholly insufficient and as a matter of law did not constitute fraud, and the exceptions urged by defendants should have been sustained.

In reply to these propositions, the plaintiff, appellee, presents the following counter proposition:

"The appellee's petition sufficiently states a cause of action for damages for fraud because he alleges he was the owner of a valid outstanding oil and gas lease upon 36.6 acres of land belonging to appellant, and was induced by the appellant to release and reconvey the oil and gas lease on said land unto the appellant upon the promise and representation by the appellant that said lease would be conveyed unto a third party who would drill an oil or gas well upon said lease or adjacent premises and was further induced to assist in procuring releases and reconveyances to appellant of other outstanding leases at considerable expense and time on the part of appellee, and further alleges that all of which things were fully performed by appellee, and further alleges that appellant agreed to convey unto appellee a commercial oil and gas lease upon the 20 acres immediately north of said 36.6 acres in consideration of appellee's surrendering his lease on said 36.6 acres and assisting in procuring the releases on other acreage belonging to appellant, and where appellee further alleges that since said agreement was made appellant has voluntarily placed it beyond his power to convey the 20 acres unto appellee and has conveyed the 36.6 acres unto such other third party as contemplated by the agreement, thus changing the appellee's position to the worse because he is unable to recover it, that is, the 20 acre lease or his 36.6 lease back, such acts and conduct on the part of appellant

constitutes an equitable estoppel and removes this cause from the operation of the statute of frauds."

 Where an action for specific performance can be sustained by reason of being based upon a contract in writing and coming within the provisions of article 1288, R. C. S. 1925, but the right of the party to bring such suit has been defeated by the conveyance of the land to another, the party whose right to the action for the specific performance has been so defeated may bring his action for damages in lieu of such other action. This rule applies only where the right to bring the suit for specific performance comes within the provisions of the statute of frauds.

The full terms of the lease were not set out in the petition, but it is alleged that the 20-acre lease, which the defendants verbally contracted with the plaintiff to convey to him, was to be "a commercial oil and gas lease covering a term of three years."

The questions for our decision are: Does the contract set out in the petition come within the provisions of the statute of frauds; or, are the facts alleged in the petition sufficient to take it without the operation of such statute?

The rule in Texas, as stated by Chief Justice Phillips in the case of Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216, is that in order to relieve a parol sale of lands from the operation of the statute of frauds, three elements are essential:

(1) The payment of the consideration;

(2) The taking of the land into possession by the vendee; and

(3) The making of valuable and permanent improvements by the vendee.

There is no allegation in the plaintiff's petition that he ever took possession of the leasehold or that he ever erected valuable and permanent improvements thereon, and neither does the evidence disclose same; consequently two of the elements necessary to sustain his right for damages, in lieu of his action for specific performance, are absent.

Judge Phillips, in the Hooks Case, supra, also says:

"Equity has no concern in such cases except to prevent the perpetration of a fraud. That is the only ground that can justify its interference. Otherwise, the exercise of its jurisdiction for the practical annullment of the statute would be but bare usurpation. It is not to remedy a possible loss to the purchaser that it may intervene. It is the operation of a plain and valid statute that is to be relieved against. For this reason eminent judges have doubted whether under any circumstances courts of equity had

originally the power to enforce such parol agreements in open disregard of the statute, and have questioned the wisdom of departing from its certain rule however plausible the pretext. The statute is valid; it is imperative; it is emphatic. Its simple requirement that contracts for the transfer of lands be in writing, imposes no hardship. The effect of its relaxation in what seemed to the courts hard cases has produced abuses almost as great as would have its rigorous enforcement, in the substitution of a doubtful state of the law for a rule that was plain and certain and easily capable of observance. In a noted early English case the chancellor made the following observation on this trend of judicial decisions:

" 'The statute was made for the purpose of preventing frauds and perjuries, and nothing can be more manifest to any person who has been in the habit of practicing in the courts of equity than that the relaxation of the statute has been the ground of much perjury and much fraud. If the statute had been rigorously observed, the result would probably have been that few instances of parol agreements would have occurred. Agreements would, from the necessity of the case, have been reduced to writing; whereas it is manifest that the decisions on the subject have opened a new door to fraud, and that under the pretense of part execution, if possession is had in any way whatever, means are frequently found to put a court of equity in such a situation that, without departing from its rule, it feels obliged to break through the statute.' " 111 Tex. 122, 229 S. W. 1116, 15 A. L. R. 216.

See also the following cases: Garner v. Stubblefield, 5 Tex. 552; Ann Berta Lodge v. Leverton, 42 Tex. 18; Robbins v. Winters (Tex. Civ. App.) 203 S. W. 149; Cross v. Everts, 28 Tex. 535; Ray v. Young, 13 Tex. 550, 552; Schulz v. Schirmer (Tex. Civ. App.) 49 S. W. 246; McCarty et al. v. May (Tex. Civ. App.) 74 S. W. 804; Sonnenberg v. Ernst (Tex. Civ. App.) 233 S. W. 564.

This seems to be the recognized rule in other jurisdictions, as well as in Texas. Boone v. Coe, 153 Ky. 233, 154 S. W. 900, 51 L. R. A. (N. S.) 907; King v. Cheatham (Ky.) 104 S. W. 751; Pitts v. Kennedy (Tex. Civ. App.) 177 S. W. 1016; 27 C. J. 354.

This suit is not a suit to recover the consideration paid, but is a suit to recover damages which includes the "bargain"—representing the profits made by reason of the greater value of the consideration which was contracted to be conveyed by the defendants, above the value of the leasehold estate in the 36.6 acres at the time of such sale. This action we hold cannot be maintained; but as the petition pleads all the facts of the transaction fully, and as it contains such a prayer as would entitle the plaintiff to recover in assumpsit the value of the consideration paid at the time it was paid, we will consider the case from that angle. Hooks v. Bridgewater, supra, § 5, p. 1117.

The peremptory requirement of the statute of frauds is that a sale (or lease for a longer period than one year) of real estate shall be in writing. Of this requirement, the parties entering into such a contract are charged with knowledge. If either party is willing to waive this requirement and to rely on the representations of the other, this fact does not and ought not suspend the operations of the statute and give to the party so relying relief beyond the recovery of the consideration paid by him, plus interest.

This holding being conclusive of the matter in suit, it is not necessary that the other assignments be discussed.

The jury found that the value of the 36.6-acre oil lease in the latter part of February, 1926, at the time the trade was made, was $366.60. The plaintiff's recovery should be in that amount, with interest at the rate of 6 per cent. per annum thereon from February 26, 1926. Sonnenberg v. Ernst, supra.

So holding, we reform the judgment of the trial court herein and hereby render judgment in favor of the plaintiff for the sum of $366.60, together with interest at the rate of 6 per cent. per annum from February 26, 1926, and further that the costs of appeal be taxed against the plaintiff, appellee, but that plaintiff recover against the defendants all costs incurred in the trial court; and as so reformed, the judgment of the trial court is affirmed.