## MATTHEWSON v. FLUHMAN.
### No. 1285—5757.

Commission of Appeals of Texas, Section B.
July 22, 1931.

Storey, Leake & Storey, of Vernon, and Underwood, Johnson, Dooley & Simpson, of Amarillo, for plaintiff in error.

Berry, Stokes, Warlick & Gossett, of Vernon, and Fitzgerald & Hatchitt, of Wichita Falls, for defendant in error.

RYAN, J.

The petition of plaintiff in error (plaintiff in the court below) alleges, substantially, that: On November 5, 1924, Fritz Fluhman and his wife (the latter now deceased) made to E. G. Matthewson, a gas and oil lease on certain lands in Wilbarger county and which included a particular tract of 36.6 acres; that on or about February 26, 1926, at Fluhman's solicitation, Matthewson released the lease on the 36.6-acre tract, in consideration of which and of Matthewson's agreement to assist in procuring releases from certain other parties, of certain other leases on other tracts of land, Fluhman would execute to Matthewson a commercial oil and gas lease, covering a term of three years, on a 20-acre tract adjacent to and north of the 36.6-acre tract, which agreement was entirely oral.

The petition alleges also, that relying upon such agreement on Fluhman's part to execute such an oil and gas lease on the 20-acre tract, plaintiff on February 26, 1926, without consideration, executed and delivered a release to the 36.6-acre tract, which was accepted by Fluhman and by him filed for record; that after securing said release, Fluhman refused to deliver to plaintiff an oil and gas lease on the 20-acre tract as he had promised and agreed, but afterwards, on or about August 7, 1926, executed and delivered an oil and gas lease on said 20-acre tract to a third party, John F. Merrick. It was averred that therefore the release of the 36.6-acre tract was without consideration and of no force and

effect; that specific performance of such oral contract is now impossible, because of the subsequent lease to Merrick.

The petition contains other averments, not necessary to repeat here.

Prayer is for damages in the sum of $200,000 and legal interest, as the reasonable cash market value of the lease on the 36.6-acre lease so released by Matthewson, on December 1, 1926, when Fluhman definitely refused to make the lease to the 20-acre tract, and, if not entitled to recover the value of said lease at that time, then for the sum of $80,000, and legal interest from December 1, 1926, as the reasonable cash market value of the 36.6-acre tract at the time of trial. In the alternative, plaintiff prayed for damages in the sum of $60,000, and legal interest from December 1, 1926, as the reasonable cash market value of the 20-acre lease at the time Fluhman definitely refused to make it, and, if not entitled to that recovery, then for the sum of $40,000 as the reasonable cash market value of the 20-acre lease at the time of trial, also "for costs of suit and all proper relief to which he may show himself entitled in law or in equity."

Defendant answered by general and special exceptions, general denial, specially that the agreement in question rested in parol and is inhibited by the statute of frauds, and the abandonment by plaintiff of the original lease contract (which included the 36.6-acre tract) by the failure of plaintiff and his assignees to drill a well thereon to the full depth of 2,200 feet and to pay certain rentals, as specified in said contract. Estoppel was also pleaded against plaintiff due to the fact, as alleged, that on February 26, 1926, when defendant received the release from plaintiff to the 36.6 acres, defendant offered to execute a lease at said time to plaintiff of 20 acres off his unleased land in the north part of same, notwithstanding he did not comply with his agreement, and plaintiff stated to defendant that he did not care for the lease on the 20 acres because he did not think it was worth anything, and thereafter defendant leased all of his acreage believing that plaintiff did not desire a lease on any of said unleased acreage in the north part of same, and, for said reason, plaintiff was estopped to sue defendant for damages as averred in his petition.

The case was submitted to a jury on special issues, resulting in the following findings:

(1) That defendant Fluhman agreed with plaintiff Matthewson to make him a lease on 20 acres of land lying immediately north of the 36.6-acre tract, if plaintiff would release the latter tract and assist defendant in obtaining releases for certain other tracts; that defendant accepted plaintiff's release of the 36.6-acre tract and the releases tendered him by plaintiff of other acreage covered in the original 200 acres; that, at the time defendant accepted the release of the 36.6-acre tract, he promised plaintiff to make him a lease on the 20-acre tract immediately north of the 36.6-acre tract, which promise was renewed by defendant from time to time thereafter, and relied on by plaintiff.

(2) That in December, 1926, defendant refused to deliver the lease of the 20-acre tract to plaintiff; that the reasonable cash market value of the oil lease on the 36.6-acre tract was $50,000 in the early part of December, 1926, and was $25,000 at the date of trial, April 1929.

(3) That the reasonable cash market value of the oil lease on the 20-acre tract was $8,000 in the early part of December, 1926, and was $2,000 at the date of trial.

(4) That the reasonable cash market value of the oil lease on the 36.6-acre tract was $366.60 in the latter part of February, 1926, and the reasonable cash market value of the 20-acre tract was $200 in the latter part of February, 1926.

(5) That the consideration for the lease of November 5, 1924, was plaintiff's agreement to drill, or have drilled, upon the acreage covered thereby, a well to the depth of 2,200 feet, which was done by the Lippard Oil Company, and no complaint was made by defendant that said well had not been completed to the contract depth at the time he accepted the releases tendered by plaintiff, and he never demanded the procurement of any additional releases; that plaintiff did not agree to procure releases for the balance of the original 200 acres leased to him by Fluhman; that plaintiff did not tell defendant that he did not care for the 20-acre lease.

(6) That when defendant promised to give plaintiff the 20-acre lease in question, in consideration of plaintiff releasing the 36.6-acre lease and assisting in getting up other releases, he (defendant) intended to carry out such promise.

The trial court accordingly rendered judgment against the defendant for $8,000 (value of the lease on the 20-acre tract in December, 1926, when defendant refused to deliver such a lease to plaintiff), with legal interest from date of judgment.

The Court of Civil Appeals reformed said judgment and adjudged to plaintiff the sum of $366.60, and affirmed the judgment, as so reformed, upon the theory (a) that the parol agreement of defendant to execute an oil and gas lease upon the 20-acre tract was obnoxious to the statute of frauds, and no damages could be recovered based upon the value of such 20-acre lease, any more than an action for specific performance could be maintained; and (b) the only remedy open to plaintiff was to recover the value of the lease on the 36.6-acre tract, in the latter part of February, 1926, when plaintiff released same

to defendant, in keeping with the agreement then made between them. 24 S.W.(2d) 751.

The questions for decision, therefore, are: Does the contract in question come within the statute of frauds (Rev. St. 1925, art. 3995, subd. 4) and, if not, what is the measure of damages for its breach?

■ As said by Chief Justice Cureton in Texas Co. v. Burkett, 117 Tex. 16, 296 S. W. 273, 279, 54 A. L. R. 1397: "The general rule is that, where one party to an oral contract has in reliance thereon so far performed his part of the agreement that it would be perpetrating a fraud on him to allow the other party to repudiate the contract and set up the statute of frauds in justification thereof, equity will regard the case as being removed from the operation of the statute, and will enforce the contract."

And by Justice Gaines, in Morris v. Gaines, 82 Tex. 255, 17 S. W. 538, 539: "The doctrine is well established that where either party, in reliance upon the verbal promise of the other, has been induced to do or to forbear to do any act, and thereby his position has been so changed for the worse that he would be defrauded by a failure to carry out the contract, equity will enforce a performance."

According to the jury's findings, Fluhman did intend to carry out his parol contract to lease the 20-acre tract in question to Matthewson at the time the latter released the 36.6-acre tract, that Fluhman intended to carry out this promise, which was renewed from time to time thereafter, and it was not until December, 1926, when he refused to deliver such lease.

■ The fraud which is sufficient to oust the operation of the statute of frauds in a transaction pertaining to real estate does not mean fraud in the sense of deliberate and conscious deceit, but a fraud inhering in the consequence of thus setting up the statute. When a verbal contract has been made, and one party has knowingly aided or permitted the other to go on and do acts in part performance of the agreement; acts done in full reliance upon such agreement as a valid and binding contract, and which would not have been done without the agreement, and which are of such a nature as to change the relations of the parties and to prevent a restoration of their former condition and an adequate compensation for the loss by a legal judgment for damages, then it would be a virtual fraud in the first party to interpose the statute of frauds as a bar to a completion of the contract, and thus to secure for himself all the benefits of the acts already done in part performance, while the other party would not only lose all advantage from the bargain, but would be left without adequate remedy for its failure or compensation for what he had done in pursuance of it. To prevent the success of such a palpable fraud, equity interposes under these circumstances and compels an entire completion of the contract by decreeing its specific execution. Pomeroy Specific Performance of Contracts (3d Ed.) § 104.

The case of Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216, is relied on by defendant in error to sustain his contention that the agreement in question here is unenforceable because of the statute of frauds. There is no inconsistency between that case and the conclusion we have reached in this case.

In that case, the exception is recognized which would exempt a transaction from the statute, where one party has been led to change his position because of his relying upon the transaction, and it would amount to a fraud upon him to permit the other party to renounce the contract.

Here, the evidence shows that plaintiff in error, holding a recorded lease on the 36.6-acre tract, was induced to surrender it to defendant in error (whose purpose was to lease it to Merrick under the latter's agreement to bring in an oil well), in consideration of defendant in error's agreement to make lease of the 20-acre tract to plaintiff in error. Plaintiff in error completed his part of the bargain, and, under the jury's findings, defendant in error renewed his promises from time to time and did not refuse to deliver the lease until December, 1926, after he had already disposed of the 20-acre tract by lease thereon to another party, rendering it impossible to restore plaintiff in error to his position, and after a producing well on the 36.6-acre tract had been brought in by Merrick.

As said by Justice Gould, in Ponce v. McWhorter, 50 Tex. 562, quoted with approval by Chief Justice Cureton, in Texas Co. v. Burkett, supra:

"The ground upon which such verbal sales are enforced, notwithstanding the statute, is the prevention of fraud. (Ann. Berta Lodge v. Leverton) 42 Tex. 31, supra. The rule is thus by Justice Clifford in a recent case: 'Where one of the two contracting parties has been induced or allowed to alter his position on the faith of such contract to such an extent that it would be fraud on the part of the other party to set up its invalidity, courts of equity hold that the clear proof of the contract and of the acts of part performance will take the case out of the operation of the statute, if the acts of part performance were already such as to show that they are properly referable to the parol agreement.' Williams v. Morris, 5 Otto (95 U. S.) 457, 24 L. Ed. 360.

"The change of circumstances growing out of valuable improvements has been assumed to be such as to make it difficult or impossible to restore the vendee to his position."

■ A contract subject to the statute of frauds is not void, but is merely voidable at the option of the party sought to be charged

therewith. Crutchfield v. Donathon, 49 Tex. 691, 30 Am. Rep. 112; George v. Williamson (Tex. Com. App.) 23 S.W.(2d) 675; Graham v. Kesseler (Tex. Civ. App.) 192 S. W. 299.

The contract involved here, even if vulnerable to the statute of frauds, as contended by defendant in error, was valid and enforceable between the parties and subject to judicial enforcement, unless the defendant in error should elect to rely upon its voidable character under the statute of frauds, and when, for the first time, he repudiated it in December, 1926, it was then that his liability arose to do equity in the way of restitution, if the contract be subject to the statute, or settle in damages for its breach, if not subject to the statute.

In Phillips v. Herndon, 78 Tex. 378, 14 S. W. 857, 858, 22 Am. St. Rep. 59, the following rule announced in Hopkins v. Lee, 6 Wheat. 109, 5 L. Ed. 218, is approved, viz: "The rule is settled in this court that, in an action by the vendee for a breach of contract on the part of the vendor for not delivering the article, the measure of damages is its price at the time of the breach. The price, being settled by the contract, which is generally the case, makes no difference, nor ought it to make any; otherwise, the vendor, if the article has risen in value, would always have it in his power to discharge himself from his contract and put the enhanced value in his own pocket. Nor can it make any difference in principle whether the contract be for real or personal property, if the lands, as is the case here, have not been improved or built on. In both cases the vendee is entitled to have the thing agreed for at the contract price, and to sell it himself at its increased value." In that case, it was further held that, on performance of his contract by payment of the purchase price, the vendee acquired the superior title and the vendor held the legal title in trust for him; and, upon breach of that trust by voluntary conveyance of the legal title to another, the vendor became liable to the vendee for such damages as resulted directly therefrom, certainly to the extent of its value at the time it was so appropriated.

In Boothe v. Fiest, 80 Tex. 141, 15 S. W. 799, Judge Gaines stated the rule to be that the measure of redress is the recovery in money of a sum equal to the value of the property at the time of conversion. That was a case where the grantee in a deed, absolute on its face, but intended as a mortgage, conveyed the land to an innocent purchaser, and the

beneficiary sued for compensation and not for the proceeds of the sale; it was held that under the peculiar facts of that case, the general rule did not apply, but the measure of recovery would be the value of the land at the time of the trial.

Here, we have no such facts as will take the case out of the general rule.

In Roberts & Corley v. McFadden, Weiss & Kyle, 32 Tex. Civ. App. 47, 74 S. W. 105, 110 (writ of error refused), it is said: "If a person contracts to convey a piece of land on a certain day for a certain price, and between the date of the contract and the day of performance he sells to another, thus putting it out of his power to convey, he is liable to the vendee for the loss of his bargain."

■ Where the vendor acts in bad faith in failing or refusing to convey, or disables himself from conveying, the purchaser's recovery is not limited to the purchase price paid, with interest and expenses, but he is entitled to compensation for his actual loss, or, as sometimes expressed, damages for the loss of his bargain. 39 Cyc. 2108.

■■ We have reached the conclusion that the contract to lease the 20-acre tract to plaintiff in error was enforceable, and that defendant in error, having himself placed it beyond his power to comply therewith, by conveying such lease to another, is liable for the value of such lease at the time he repudiated the same, which the jury found to be $8,000.

The defendant in error cannot accept the leasehold estate on the 36.6-acre tract pursuant to his parol contract of exchange, reap the large benefits therefrom by the obtaining of producing wells thereon under his lease to Merrick, in the meantime assuring plaintiff in error that he would live up to his agreement to convey the leasehold estate on the 20-acre tract, and then refuse to perform when the extraordinary value of such leasehold was proven by the outcome of events, without accounting for such value at the time of refusal.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the trial court be affirmed.

**CURETON, C. J.**

Judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.