## CAPPS et al. v. JOINER et al.
### No. 4435.

Court of Civil Appeals of Texas. Texarkana. Feb. 13, 1934.

Rehearing Denied March 15, 1934.

Pollard, Beauchamp, Lawrence & Lux, of Tyler, for plaintiffs in error.

McEntire, James & Clower, of Tyler, and D. A. Frank, of Dallas, for defendants in error.

JOHNSON, Chief Justice.

Plaintiffs in error were plaintiffs in the trial court, and defendants in error were defendants in the trial court, and will be referred to as plaintiffs and defendants.

In this suit plaintiffs, L. W. Capps, G. O. Golightly, R. C. McElmury, and the Alexander & Smith Oil Company, sued defendants, C. M. Joiner, individually and as trustee, and H. L. Hunt, trustee, to secure specific performance on the part of C. M. Joiner of his contract, dated October 1, 1930, to assign a certain oil and gas lease. In the alternative plaintiffs prayed for damages for loss of the leasehold interest contracted to be assigned

to plaintiffs by C. M. Joiner covering forty acres of land described, located in Rusk county. H. L. Hunt was made party defendant to the suit for the reason that he had subsequently purchased the land from C. M. Joiner, individually and as trustee, by instrument of date November 26, 1930. It being the contention of plaintiffs that, by virtue of the terms of the instrument under which H. L. Hunt acquired title from C. M. Joiner, H. L. Hunt was not and could not claim to be an innocent purchaser; and plaintiffs sought to have the cloud removed from the title cast thereon by the conveyance to H. L. Hunt. H. L. Hunt specially pleaded the defense of innocent purchaser. A trial was had to a jury and, upon findings of the jury in answer to special issues submitted, the court rendered judgment in favor of defendants and against plaintiffs. From this judgment the plaintiffs have perfected their writ of error to this court.

The contract was entered into by C. M. Joiner as party of the first part, Alexander & Smith Oil Company and L. W. Capps, parties of the second part, and G. O. Golightly and R. C. McElmury, party of the third part, the pertinent terms of which are:

"Whereas party of the first part is owner and holder of a certain oil and gas lease (describing it) * * * and

"Whereas party of the second part is desirous of drilling or causing to be drilled a well on said above-described tract under the terms and conditions contained herein; and

"Whereas party of the third part in consideration of its services as brokers herein are to share in this deal;

"Now, Therefore, Know All Men By These Presents: That for and in consideration of the covenants and agreements herein contained, and the benefits accruing to each party of this contract, that first party hereto covenants, agrees, obligates and binds himself:

"First: To deliver to second party hereto an assignment to a full ⅞ oil, gas and mineral lease, covering the north 20 acres of the above described 40 acre tract, showing good and merchantable title to said lease;

"Second: To deliver to third party hereto, an assignment to an undivided one-half interest in and to the south 20 acres of the above described 40 acre tract; said assignment to said south 20 acres to retain unto the said first party a 1/32 overriding royalty, and further, to retain to said first party a sum equal to $16,000.00, to be paid out of the first oil produced from said south 20 acres, after paying all royalties accruing under the terms of said lease and/or assignment;

"Third: To deliver above-mentioned assignment when said second parties have accepted title as good and merchantable, in the opinion of their attorney, within 15 days from date hereof; and shall have in good faith, started operations for the drilling of a well, as specifically set out herein, within 15 days from date of said acceptance; said well to be drilled on the south 20 acres of the above described 40 acre tract; under the terms and conditions as outlined below; and

"Whereas second parties hereto, in consideration of the promises and covenants and agreements herein contained, agree, obligate and bind themselves;

"First: Upon examination and acceptance of title to said above described tract, as above outlined, to furnish at their own cost and expense, derrick, rig, and equipment necessary to drill and complete said well at their own cost and expense, to a depth sufficient to test the Woodbine Sand, or 3600 feet; unless oil or gas in paying quantities is found at a lesser depth; in case a well producing oil or gas in paying quantities be had, to connect same to the top of the ground ready for flow tanks.

"Second: To drill said well in a good and workmanlike manner and to give to all parties hereto, logs and any other information requested while said well is being drilled."

It is the contention of the plaintiffs that C. M. Joiner breached the above contract by failing to execute and deliver the assignment or to furnish plaintiffs with an abstract or any other evidence showing good and merchantable title to the land, within the fifteen days specified in the contract, or at any other time; by reason of which it is claimed that plaintiffs are entitled to the equitable remedy of specific performance, decreeing title out of C. M. Joiner and into plaintiffs, or, in the alternative, they are entitled to the legal remedy of damages.

It is the contention of the defendants that C. M. Joiner was not by the terms of the contract obligated to furnish an abstract or other evidence showing good title to the land, but that it was the duty of plaintiffs to satisfy themselves as to Joiner's title by such means and in such manner as they saw fit. It is the further contention of the defendants that the contract between Joiner and the plaintiffs is not such as specific performance will be enforced, for the reasons contended (1) that the contract is unilateral, in that it is dependent "upon examination and acceptance of title by parties of the second

part"; and (2) that the promise on the part of parties of the second part to drill the oil well and furnish a log thereof was an obligation to perform personal services.

Plaintiffs have presented a number of assignments of error, but we shall discuss the points raised, which, from the view we have taken, determine the case: First, whether or not C. M. Joiner was obligated by the contract to furnish an abstract or other evidence showing good and merchantable title to the land; second, whether or not plaintiffs were entitled to the remedy of specific performance; and, third, what is the measure of plaintiffs' damages, in the event it is determined that C. M. Joiner breached the contract by failing to furnish an abstract or other evidence showing good title, and should it be further determined that plaintiffs are not entitled to the remedy of specific performance.

◼ It is thought that by the terms of the contract obligating C. M. Joiner to deliver to plaintiffs an assignment of the leasehold interest specified in the contract "showing good and merchantable title to said lease" within fifteen days from the date of the contract clearly imposes the duty upon C. M. Joiner to accompany his assignment of the leasehold interest, contracted to be assigned and delivered to plaintiffs, with an abstract, or other proper evidence, showing good and merchantable title to the leasehold in C. M. Joiner. We do not think that evidence of the universal custom of such transactions is a requisite to the construction we have placed upon the terms of the contract in this respect; however, if such need be, it was shown by the evidence and found by the jury that it was the custom in such transactions for the vendor to furnish an abstract showing a good and merchantable title. Gulf Production Co. v. Cruse (Tex. Com. App.) 271 S. W. 886; Easley v. Continental Casualty Co. (Tex. Com. App.) 296 S. W. 487; Alexander v. Heidenheimer (Tex. Com. App.) 221 S. W. 942; Dawson v. Malone (Tex. Civ. App.) 283 S. W. 634; 10 Tex. Jur. § 170, p. 295. It is undisputed that C. M. Joiner did not execute the assignment provided for in the contract and that he did not furnish an abstract, or any other showing whatever of title to the land to plaintiffs, within the fifteen days specified in the contract, or at any other time. We are of the opinion that in this particular C. M. Joiner was in default and thereby breached the contract.

◼ We do not think that defendants' contention to the effect that the contract was unilateral, for want of unconditional promise of performance on part of plaintiffs, can be sustained. The terms of the contract, providing "that the assignment should be delivered when plaintiffs have accepted title as good and merchantable in the opinion of their attorneys," would not in any wise authorize plaintiffs or their attorneys to have arbitrarily rejected a good and merchantable title when tendered by C. M. Joiner. Mathews v. Caldwell (Tex. Com. App.) 258 S. W. 810. In this respect the performance of the contract was not optional on the part of plaintiffs; hence not unilateral.

◼ Under defendants' second contention, it is claimed that the terms of the contract called for the performance of "personal services" on the part of the plaintiffs, for which reason the remedy of specific performance would not lie in favor of the defendant C. M. Joiner had he sought it; therefore, for lack of mutuality in its enforcement as to both parties, it would not lie in favor of the plaintiff. Mutuality in enforcement as to both parties is essential to support the remedy of specific performance in favor of either party. In Galbreath v. Farrell (Tex. Civ. App.) 249 S. W. 277, 280, it is said: "As we understand the rule under the authorities in cases of this kind, before a court of equity will enforce affirmative promises made by defendant in behalf of the plaintiff, it must also be able to enforce the affirmative promises made by plaintiff in behalf of the defendant. Such court never deems it wise or just to enforce one or more of the promises in a contract until it can enforce all of the contract outstanding at the time of the suit, including the promises of the plaintiff as well as those of the defendant."

◼ In general the remedy of specific performance does not lie to enforce the terms of a contract obligating performance of personal services; therefore, if the contract obligating plaintiffs to drill the oil well was such as required the performance of personal services on the part of plaintiffs, and upon whose will the performance thereof rests, it cannot be specifically enforced against the plaintiffs, and if it could not be so enforced against plaintiffs, it lacks the essential mutuality and specific performance will not be enforced against defendants. Goodwin, Inc., v. Stuart (Tex. Civ. App.) 52 S.W.(2d) 311. And in the case of Logan v. Elliott (Tex. Civ. App.) 61 S.W.(2d) 157, we find the general expression that a contract for the drilling of an oil well is of that nature as will not be specifically enforced, yet, in view of the case on the facts then being considered, it is evident that the

expression was not intended to have a general and invariable application to all cases.

A contract to drill an oil well may by its terms, or by reason of the consideration or circumstances under which it was entered into, obligate in performance the personal services on the contracting parties. It does not appear from its terms, or the attending circumstances, that the contract here under consideration was entered into with the particular intent and purpose of obtaining in actual performance the personal services of the obligated parties. We are not of the opinion that such a contract is in its nature alone necessarily a contract for performance of personal service on the part of the contractor, and is not for such reason a contract which a court of equity would under any and all circumstances refuse to enforce performance. In the case of Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27, 32, our Supreme Court, with reference to the implied covenants obligating the lessee to reasonably develop the premises leased for the mining of oil and gas said: " * * * Should there be a breach of such covenant for which an action for damages, for any reason, furnishes no adequate remedy, our courts, in the exercise of equitable jurisdiction, will compel the lessee to fully perform his obligation. * * *"

In the case of Hunt v. State (Tex. Civ. App.) 48 S.W.(2d) 466, 468, a receiver was appointed to drill and develop the property on application of the state as plaintiff, alleging that defendants had failed and neglected to perform their obligation "to develop same, and to account to the state for its royalty," citing United N. & S. Oil Co. v. Meredith (Tex. Civ. App.) 258 S. W. 550. Numerous authorities may be added to the above, where our courts have through receiverships undertaken to enforce implied obligations to drill and develop property for oil and gas. Express obligation would not be inapplicable. Hence we think that such a contract is not necessarily in subject-matter alone of that character involving personal services in the respect that a court of equity will for such reason refuse specific performance, if in equity the person applying be otherwise entitled to the remedy. However, we are not of the opinion that the plaintiffs have shown themselves, in the circumstances, entitled to the equitable remedy of specific performance. When C. M. Joiner breached the contract by failing to furnish the abstract or other evidence showing good and merchantable title, plaintiffs had the right to then enforce specific performance if they were then willing to accept such title as Joiner could convey, or plaintiffs had the right to treat the contract as ended and sue for their resulting damage. But, since the terms as well as the subject-matter of the contract and the attending circumstances show that time was of the essence with respect to performance on the part of plaintiffs, then, if they did not choose to treat the contract as ended and sue for the breach, but decided to treat it as continuing and to enforce its specific performance, it was incumbent upon plaintiffs to have shown their willingness to accept such title as Joiner could convey and to have in good faith started operations for the drilling of the well within the time specified in the contract. The value of the lease was subject to fluctuation as result of tests then being made in that general locality. Plaintiffs made no move and took no action with respect to starting operations to drill the well, and did not act indicating their intention to secure specific performance until the filing of their petition, June 25, 1931, when the property had enhanced to great value.

"It is an acknowledged rule of equitable jurisprudence, that a party entitled to a specific conveyance of property, personal or real, will not be permitted to hold back from an assertion of his rights, and speculate upon the chances of such changes as may decide whether it would be to his interest, to have the conveyance made; but he is required to be vigilant and prompt in the assertion of those rights; and, if changes have occurred during this lapse of time, in the value of the property to be conveyed, or in the consideration to be paid, a Court of equity will always refuse its aid, and leave the party to seek redress, where the law had left him, by a suit for the breach of the covenant." De Cordova v. Smith's Adm'x, 9 Tex. 129, 58 Am. Dec. 136; Whittenburg v. Groves (Tex. Com. App.) 208 S. W. 901; Scarborough v. Arrant, 25 Tex. 129.

In so far as concerns the remedy of specific performance, we are of the opinion that plaintiffs' failure to evidence an intention to carry out their obligations in the respect mentioned, in the particular circumstances, was not excused by Joiner's previous breach of the contract, and that plaintiffs' failure to perform the obligations imposed upon them by terms of the contract amounted to an election of their remedy to sue for damages.

It is contended by defendants that the measure of plaintiffs' damages should be gauged by the customary rule with respect

to the breach of the vendor of his obligation to convey land; that is, the vendee's measure of damages is the difference between the contract price and the salable price on the date of the breach of the contract. Bowen v. Speer (Tex. Civ. App.) 166 S. W. 1183; Monroe v. South (Tex. Civ. App.) 64 S. W. 1014; Stinson v. Sneed (Tex. Civ. App.) 163 S. W. 989; Runnels v. Pruitt (Tex. Civ. App.) 204 S. W. 1017; Spencer v. Davis (Tex. Civ. App.) 298 S. W. 443; Broun v. Shannon (Tex. Civ. App.) 290 S. W. 802. We are not of the opinion that the general rule relied on by defendants is the correct measure of damages in this case. In substance, the plaintiffs alleged their damages to be in the loss of the leasehold contracted to be conveyed; that is to say, they base their measure of damage on the loss of their bargain. The loss of their bargain is the value of the leasehold interest contracted to be conveyed on the date C. M. Joiner repudiated his obligation to convey, which is the correct measure of plaintiffs' damages in the case. Matthewson v. Fluhman (Tex. Com. App.) 41 S.W.(2d) 204. The jury found the value of the seven-eighths leasehold interest to be of $200 per acre; that is, in the total sum of $6,000.

Wherefore the judgment of the trial court as to H. L. Hunt is affirmed, and in all other respects reversed, and judgment is here rendered in favor of L. W. Capps and the Alexander & Smith Oil Company and against C. M. Joiner, individually and as trustee, for the sum of $4,000, and in favor of G. O. Golightly and R. C. McElmury and against C. M. Joiner individually and as trustee for the sum of $1,687.50. The costs of this appeal and in the trial court are adjudged against C. M. Joiner.