GUARANTY SECURITIES CORPORATION
et al. v. MARSHALL.

No. 10965.

Court of Civil Appeals of Texas. Galveston.

March 28, 1940.

On Rehearing May 2, 1940.

Rehearing Denied May 16, 1940.

Sam W. Davis, Cole, Patterson & Cole, and Seymour Lieberman, all of Houston, for plaintiffs in error.

Virgil Childress and Lawler, Wood & Childress, all of Houston, for defendant in error.

CODY, Justice.

Defendant in error, A. B. Marshall, who will hereafter be called plaintiff, brought this suit to recover from plaintiffs in error, who will hereafter be called defendants, general and special damages for breach of the written contract hereinafter set forth.

It appears from the evidence that plaintiff, an oil-well driller, obtained an oil and gas lease from the Eugene L. Bender Estate on certain land near Humble, in Harris County, Texas, on August 10, 1936. Such lease required that a well be commenced within 60 days, and thereafter the commencement of another well within 60 days of the completion or abandonment of the preceding well, until oil was discovered and four producing wells drilled in. On September 29, 1936, plaintiff assigned to defendants an undivided one-half interest in the lease in consideration of their collaboration in drilling a well on the lease to a depth of 2,400 feet. It was agreed that after the completion of the well if defendants did not wish to drill another they should re-assign to plaintiff not less than 10 days prior to the time the lease would expire for failure to commence a·second well. The first well was drilled to the agreed depth by November 22, 1936; though there was some showing of gas and oil, the well did not produce. Defendants elected to abandon the lease and drill no more wells.

Defendants owned a block of leases in Walker County, Texas, and wished to remove the derrick, which belonged to plaintiff, and the drilling rig, which had been assembled jointly by the parties, from the Bender lease to the leases in Walker County, and there use them. The parties therefore made the following written contract:

"Guaranty Securities Corporation,
"Houston, Texas
"November 24, 1936.
"Mr. A. B. Marshall,
"Humble, Texas.
"Dear Sir:

"We desire to move the drilling rig assembled jointly by yourself and us for the purpose of drilling a well at Humble, Texas, on the Bender Lease, different portions of

this drilling rig belonging to you and ourselves, equipment as owned by each known, to Walker County, Texas, for the purpose of drilling a well on the designated lease that is known to ourselves, to a depth not exceeding 2500 feet.

"We agree to pay the entire expense of moving this equipment and drilling this well and, as a consideration for the loan of a portion of the equipment belonging to you, we agree to assign you an eighteen-acre lease in our block in Walker County.

"We also agree to employ you at a salary of $10.00 per day for twelve hours as a driller on said well. After completing this well, which we agree shall not exceed sixty days from date of this letter, we agree to move, providing you so elect, this equipment, jointly owned, back to the Bender lease at Humble, Texas, for the purpose of drilling a second well on said lease providing you, in turn, agree not to use the portion of equipment in this rig that belongs to us longer than a sixty-day period from time of delivery on said lease. We also agree to re-erect 96-foot derrick on Bender lease at Humble, Texas.

"This letter signed by us and accepted by you, shall constitute an agreement as above stated.

"Yours very truly,
"Guaranty Securities Corporation,
"By [s] A. U. Morrison, President
"[s] G. G. Zinn, Vice Pres.
"[s] R. E. Doty.

"Accepted:
"[s] A. B. Marshall."

The derrick and drilling rig were duly moved to the leases in Walker County; and the well, which it was contemplated would be drilled there, was completed on December 10, 1936, and plaintiff duly requested the return of the derrick and rig to the Bender Lease. These were stacked and ready for hauling by December 22, 1936, but were not returned, and in their absence it seems undisputed that plaintiff was financially unable to begin the drilling of a well and prevent the lease terminating by its terms.

The proof made at the trial is indicated by the special issues, as answered by the jury:

"Special Issue No. 1. What do you find from a preponderance of the evidence was the reasonable rental value, if any, per day from January 23, 1937, to July 7, 1937, of that portion of the rig and drilling equipment owned by plaintiff and used by him in drilling the well on the Bender lease at Humble and the well in Walker County? * * * Answer: $12.50."

"Special Issue No. 2. What do you find from a preponderance of the evidence was the reasonable rental value, if any, per day from July 7, 1937, to this date (date of trial) of the derrick and that portion of the rig and drilling equipment owned by plaintiff and used by him in drilling the well on the Bender lease at Humble and the well in Walker County and not taken by plaintiff on or about July 7, 1937? * * * Answer: $4.00 per day."

"Special Issue No. 3. Do you find from a preponderance of the evidence that the failure of the defendants to return the derrick and drilling equipment from Walker County to the Bender lease and to re-erect the 96-foot derrick thereon was the proximate cause of the loss, if any, of the Bender lease by plaintiff, A. B. Marshall? * * * Answer: Yes."

"Special Issue No. 4. What do you find from the preponderance of the evidence was the highest actual value to the plaintiff of the Bender lease at any time between such time as you may think was a reasonable time after the conclusion of the work in Walker County, and to the 15th of October, 1937, if any? * * * Answer: $3,600.00."

The court entered judgment on the answers, as follows:

Item 1, (Special Issue No. 1) 164 days @ $12.50 per day........ $2050.00
Item 2, (Special Issue No. 2) 477 days @ $4.00 per day......... 1908.00
Item 3, (Special Issues 3 and 4) 3600.00
———————
$7558.00

Defendants make no attack here on Item 1; but assail Item 2, for $1,908, and Item 3, for $3,600. We will first discuss Item 3.

The evidence to support the jury's finding for Item 3 is, as we understand it, plaintiff's opinion that the Bender lease, which he lost due to defendant's failure to return the derrick and drilling rig (and his own poverty which prevented him from renting another), was of the actual value of $3,600. This he based upon the facts that there had been some showing of gas and oil in the first well theretofore drilled by the parties on the Bender lease, and abandoned, and upon his knowledge of the geological structure, and upon the further

fact that he believed oil would be produced if the first well were deepened, and it had cost $3,600 to drill a well down to the depth of the first well. We now turn to plaintiff's brief that his theory may be expounded in the language of his counsel: "The cost of the well drilled by plaintiff and defendants on the Bender lease certainly was a relevant factor in determining the actual or intrinsic value of the lease. Proof of actual or intrinsic value of property 'may be shown by the value of its uses, its particular fitness for such uses, and its adaptability for any other uses or purposes, and the reasonable value thereof; and, generally, a witness may give his opinion of the value of such property based on such uses and the value thereof, when it has been shown that he had some knowledge of such uses beyond that of the jurors.' Lower Colorado River Authority v. Hughes, Austin, Tex.Civ.App., 122 S.W.2d 222, 223, quoted with approval by this Honorable Court in Foley Bros. Dry Goods Co. v. Settegast, 133 S.W.2d 228, 232, 233. The undisputed evidence in this case shows that the well on the Bender lease encountered oil sands near the bottom of the hole and that gas rose in the casing and made a few 'heads'. Plaintiff testified he wanted to go back into that well and drill it deeper because he thought the lease would produce oil. The presence of a well 2600 feet deep, which could be used to explore a lower depth, certainly gave the lease a greater value; and obviously the cost of that well was a proper factor to be considered by the jury, along with the undisputed physical facts, as a determinant of actual value."

We find ourselves unable to agree with plaintiff's application of the principle applied in Lower Colorado River Authority v. Hughes, supra, and by us in the recent case of Foley Bros. v. Settegast, supra, writ of error refused, that the actual value of property may be shown by the value of its uses, its particular fitness for such uses, its adaptability for any other uses, etc. Of course, if the mere exploration for minerals were an end in itself, and their discovery a matter of indifference and of no value in comparison with exploring therefor, the principle might here apply. But in order for an oil well to have *actual* and *intrinsic* value, as distinguished from market value—and it is of *actual* and *intrinsic* value that plaintiff is speaking—it must have some production value. In order for the first well, which had been drilled to a

depth of 2,400 feet at a cost of $3,600, to have an actual value to an oil operator of $3,600, he must earn out of production from such well (i.e., out of the working interest) not merely $3,600, but enough more to pay whatever the additional cost of drilling deeper to discover oil would come to. Of course, we don't wish to be understood as intimating that in order to establish the actual value of an oil interest it would be necessary for one to go out and drill a property in order to determine its value. But it clearly appears from plaintiff's quoted exposition, that it is his theory that so long as he in good faith believed that he might strike oil at a lower depth, and desired to use the well in order to try, the fact that it was down to a depth of 2,-400 feet, and afforded him à chance to begin going deeper at that point—i.e., was fitted or adapted to his desire to start at a depth of 2,400 feet—in and of itself warranted him in concluding that the lease with the dry hole on it, which it had cost $3,600 to produce, was worth $3,600 to him, and in authorizing the jury to accept his opinion. Obviously it could not be worth $3,600 unless it earned the operator the cost of drilling the well 2,400 feet. In other words, even if it be conceded that the operator was entitled to the first 2,400 feet (as being the owner of the hole) the well would have to produce, out of the working interest, oil of the value of $3,600. And for a discussion of the type of evidence by which values of oil interests are to be established, see Texas P. Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S.W.2d 1031, 60 A.L.R. 936.

Our discussion of Item 3, above, has proceeded on the assumption that defendants were liable to plaintiff for the value of the lease. As we have found that there was no sufficient evidence to support the finding that the Bender lease was worth $3,600, it probably is not necessary to pass on whether the value of the lease was recoverable as special damages or not. Plaintiff contends that it is now well settled in Texas that when an oil and gas lease is lost by reason of a breach of contract the measure of the loser's damages is the value of the lease; and cites Matthewson v. Fluhman, Tex.Com.App., 41 S.W.2d 204; Capps v. Joiner, Tex.Civ.App., 69 S.W.2d 853; Gladys Belle Oil Co. v. Turner, Tex.Civ. App., 12 S.W.2d 847. Certainly where the contract is one to convey or assign an oil lease, as was true in the cited cases, the

value that the oil lease has, in excess of what the assignee was to give therefor, fixes the damages. As was said by Judge Ryan in Matthewson v. Fluhman, supra [41 S.W.2d 207]: "We have reached the conclusion that the contract to lease the 20-acre tract to plaintiff in error [who had completely performed his part of the contract] was enforceable, and that defendant in error, having himself placed it beyond his power to comply therewith, by conveying such lease to another, is liable for the value of such lease at the time he repudiated the same, which the jury found to be $8,000." As Fluhman had contracted to lease the 20-acre tract to Matthewson, and had received the consideration therefor, and breached his contract by leasing the property (which in equity belonged to Matthewson) to another, he damaged Matthewson to the extent of the value of the lease. But in the case before us the contract was to deliver a derrick and drilling rig upon the Bender lease, and permit it to be there used for 60 days. By breaching the contract to so deliver such drilling rig and derrick, defendants deprived plaintiff merely of the rental value of a derrick and drilling rig—and the cost of transportation back from Walker County. It does not follow that because the measure of damages for the breach of a contract to assign a mineral lease is the value of the lease, the measure of damages for the breach of a contract to furnish a drilling rig and derrick, and the lease is permitted to expire, that the value of the lease is the measure of damages. Defendants, however, seem to acquiesce in plaintiff's theory that his poverty would entitle him to recover the value of the lease, so we do not rule on the point. We further note that the contract between plaintiff and defendants specified: "We agree to move * * * this equipment, jointly owned, back to the Bender lease, for the purpose of drilling a second well on said lease. * * *" It therefore appears that it was not in contemplation of the contract that "this equipment, jointly owned", should be used in the first well. If it was not in contemplation that "this equipment" should be used in the *first* well, we are unable to see how the theory of special damages can find support—for plaintiff would have to drill another well with "this equipment" before he could use the bottom of the first well as a base of operations. We believe it was error for the court to award judgment for Item 3, in the sum of $3,600.

With reference to Item 2, supra, it seems not to be disputed that on July 7, 1937, plaintiff accepted possession of his portion of the equipment in Walker County, but removed only a portion of it, leaving, however, the balance of it in the possession of a watchman whom he paid to watch it, and whose possession was his possession. In this connection plaintiff says, quoting from his brief: "The fact that plaintiff took possession of part of his property afforded defendants no excuse for failing to return the remainder" (citing authority). This is undoubtedly correct. But plaintiff had the right to take possession of his property in Walker County, if he desired. By doing so he would not waive his right for damages for defendants' breach of their contract to re-deliver his property in Harris County. But he cannot recover damages from defendants for wrongfully withholding his property from his possession during the period that defendants assert, and which we understand plaintiff does not deny, that the undisputed evidence shows the property was within the dominion or possession of plaintiff in Walker County. We note from the pleadings that plaintiff sued for damages for failure of defendants to re-deliver his property in Harris County. We do not know what the proof showed on this issue, but unless he waived such damages he would now have been entitled to recover same. As the evidence affirmatively establishes that plaintiff took possession of his equipment on July 7, 1937, either personally or by his watchman, the finding of the jury with reference to Item 2, is without support in the evidence.

So much of the trial court's judgment as awards plaintiff Item 1 damages in the sum of $2,050 is correct and should be affirmed; the court erred, however, in awarding Items 2 and 3 to plaintiff. The judgment of the trial court is therefore reformed so as to reduce the amount awarded to the sum of $2,050, as hereinabove indicated, and as thus reformed, the judgment of the trial court is in all things affirmed.

Reformed and affirmed.

### On Defendant in Error's Motion for Rehearing.

This case was submitted without oral argument. It was stated at the outset of defendants' (plaintiffs in error's) brief that plaintiff had accepted his portion of the equipment in Walker County on July 7,

1937, though he removed only a portion of it from the location at that time. It is too clear to require citation of authority that, if this were true, defendants would not be liable for wrongfully withholding possession of equipment from plaintiff after the time plaintiff had accepted possession thereof, though they might be liable for damages for breach of their obligation to deliver possession to plaintiff on the Bender Lease. Plaintiff (defendant in error) did not challenge this clear-cut and decisive statement, at least directly. We now find that plaintiff did not accept all of his equipment on July 7, 1937, because one Markle had removed a portion of such equipment from the location of the well in Walker County. Plaintiff did on that day, however, accept all of his equipment except the portion which had been removed by Markle. He filed a complaint against Markle in Walker County, accusing him of the theft of the portion of the equipment which he, plaintiff, had not removed on July 7, 1937. Thereafter, and before he brought this suit, plaintiff recovered all of the equipment which Markle had removed except three items and a portion of the derrick. By advice of counsel plaintiff kept such retaken portion of his equipment in Walker County as evidence in connection with the prosecution of Markle; that is, plaintiff held such retaken equipment in Walker County subject to his own orders and control. Plaintiff seems to have acquired possession of the equipment which Markle had removed in broken lots at different times. But, with the exception of the three items and portion of derrick aforesaid, he had taken possession of all of his equipment which had been removed by Markle, in Walker County, before the trial of this case. While it does not appear at what times plaintiff took possession of his various items of equipment after July 7, 1937, and before the trial of this cause, it is too clear to require citation of authority that he had no right to recover damages from defendants for the wrongful detention of the various items of his equipment from his possession for the period of time after the same had been retaken into his possession. It appears from plaintiff's own testimony that all of his equipment, which had been removed by Markle, had been recovered into plaintiff's possession prior to the trial, except three items and a portion of the derrick. It was therefore clearly error for the court below to render a judgment which had the effect of awarding plaintiff damages for the wrongful detention of equipment belonging to plaintiff for the time during which such equipment had been recovered into plaintiff's possession.

It has now become clear to us that the trial court tried the branch of this case relating to item 2 on the wrong theory. The theory upon which the trial court apparently proceeded is that plaintiff had the right to have his equipment returned to the Bender Lease unless he waived such right; and that in order for defendants to take advantage of this waiver, they must plead and prove it. Undoubtedly the proof did show that plaintiff had the right to have his equipment returned to the Bender Lease. And the retaking of the possession of his equipment by plaintiff in Walker County does not necessarily show any waiver of damages for the breach of defendants' obligation to return the same to the Bender Lease. However, plaintiff's cause of action in regard to the branch of his case which we have designated as item 2, is an action in the nature of detinue. And plaintiff cannot recover for the wrongful detention of his property during the time that he had taken repossession of it. How long a period of time this was with respect to each item does not appear. But the burden was on the plaintiff to plead and prove the time the various items were wrongfully detained, in order to recover damages for the wrongful detention.

As this branch of the case was tried on the wrong theory, and as plaintiff prevailed in the court below, and as the evidence shows that plaintiff is undoubtedly entitled to recover damages for the time that the various items of equipment were wrongfully detained from plaintiff's possession, this branch of the case must be remanded for a new trial. Waldo v. Galveston, H. & S. A. R. Co., Tex.Com. App., 50 S.W.2d 274, 276.

Plaintiff strenuously contends that we erred in our former opinion, reducing the judgment of the trial court $3,600, on account of the branch of the case which we have designated as item 3. In the branch of his case which we have designated as item 3, plaintiff seeks to recover the actual value of the Bender Lease, which was lost because of the failure to comply with the drilling obligations. In order to show the actual value of the Bender Lease, as distinguished from market value—it being shown it had no market

value—plaintiff's testimony shows vaguely that such lease might have some amount and value of oil production. Indeed, to have actual value as an oil property, the lease must produce oil in paying quantities. But for evidentiary purposes it is not necessary to prove that oil would actually be produced from the lease in paying quantities—this could be done only by actually drilling, but the probable production in paying quantities must, at all events, be shown. Texas Pac. Coal & Oil Co. v. Barker et al., 117 Tex. 418, 6 S.W.2d 1031, 60 A.L.R. 936. "The amount and value of oil or gas production, obtained or obtainable through reasonable diligence, must be definitely alleged, and must be proven with reasonable certainty before damages may be allowed for breach of an express or implied covenant to continue the production of oil or gas, whether such damages result from failure to produce oil or gas or from loss of same by drainage," said the Supreme Court. 117 Tex. at page 429, 6 S. W.2d at page 1034, 60 A.L.R. 936. As plaintiff is seeking to recover for the actual value of the Bender Lease, which is valuable, of course, only for oil purposes, it would be necessary for plaintiff, in showing its actual value, to definitely allege and prove with reasonable certainty the amount and value of oil or gas production that was obtainable from the Bender Lease through reasonable diligence. This, we believe, plaintiff has wholly failed to do in this case. He testified that its value was at least $3,600.00 to him, because from the formation he believed oil could be produced, and he desired to drill deeper, and he could use the bottom of the hole which it had cost $3,600 to drill, as a starting point to drill deeper. Such testimony completely fails to prove with reasonable certainty the amount and value of oil or gas production that was obtainable from the Bender Lease. Plaintiff contends, however, that his testimony that the lease was worth at least the cost of drilling the hole did not militate against or destroy the other evidence which, as plaintiff contends, was independently sufficient to sustain the jury's finding; and that plaintiff's opinion of value based upon the cost of the well was a fact to be considered by the jury in weighing his opinion, based on the physical facts, that the lease was worth $3,600, because it would probably produce

oil. As indicated, in order for plaintiff to show the actual value of the Bender Lease he must show its value for oil and gas production under the rule of the Barker case. But placing aside the rule in the Barker case, we do not believe that plaintiff's testimony is to be construed as meaning that the Bender Lease would produce at least $3,600 to the operator in oil or gas. Nor did the jury so construe such testimony. It found (Special Issue No. 4), that the *highest* actual value to plaintiff of the Bender Lease, etc., was the sum of $3,600. It is clear that they understood plaintiff's theory, and adopted it, that the lease was worth $3,600, because further exploration could be started at the bottom of the hole that had cost that much to drill, and that this element of value existed independent of whether oil was discovered or not. However that may be, we cannot cast aside the rule of the Barker case. And plaintiff makes no contention, we believe, that he either definitely pled or proved with reasonable certainty the amount and value of oil or gas production obtainable from the Bender Lease through reasonable diligence. And as we have no doubt that the rule laid down in the Barker case is controlling, we decline to certify this point to the Supreme Court as being novel—as plaintiff has moved to have done.

So much of the trial court's judgment as awards plaintiff Item No. 1 damages in the sum of $2,050 is correct, and, as, on original hearing, is affirmed; the court erred, however, in awarding plaintiff judgment for damages in any sum on account of the loss of the Bender Lease, and in this respect the trial court's judgment is reversed and here rendered for appellant. The cause, however, is remanded for a new trial on the issue of damages sustained by plaintiff for the wrongful detention of so much of plaintiff's equipment not taken by him on July 7, 1937, or for the conversion of any part thereof, if any; and the trial court is instructed to try the issue of damages, if any, sustained by plaintiff by reason of defendants' failure to redeliver any of plaintiff's property on the Bender Lease, or at his home.

Defendant in error's motion for rehearing granted; former judgment set aside; judgment of trial court affirmed in part, reversed and rendered in part and in part reversed and remanded.