## WOOD AND WIFE V. WHEELER.

The case of Wood and Wife v. Wheeler (7 Tex. R. 18) confirmed ; and it seems that the excess beyond the homestead exemption allowed by the Act of 1839, and within the exemption allowed by the Constitution, will be subjected, in the first instance, to the payment of debts contracted anterior to the 16th of February, 1846, without first reducing such preferred debts, by a *pro rata* application of the other assets.

Where a controversy arose in the Probate Court, between a creditor of an estate, and the widow and children, as to the homestead exemption, whether certain property was exempt or not, which went to the District Court and from that to the Supreme Court, where a decree was rendered against the widow and children and the cause remanded for further proceedings, it was held that it was too late to dispute the fact or amount of the claim, after the return of the case to the Court below.

Where property which exceeds the homestead exemption in value, is ordered to be sold by the Probate Court, the terms should be cash, to the amount of the homestead exemption, to be paid over immediately to those entitled, and a credit of twelve months for the balance.

Appeal from Washington. Both parties appealed.

*J. Sayles,* for Wood and Wife.

*Giddings,* for Wheeler.

HEMPHILL, CH. J. This cause is for the third time before the Supreme Court. In its origin, it was an application, by Josephine Massie and Ann Massie, the widow and daughter of Williamson W. Massie, deceased, that the property of the succession, exempt by the Constitution and laws from forced sale, should be set apart for their sole use. The proceeding was under the Probate Act of 1846, and the application was opposed by D. G. Wheeler, the appellee, on the ground that one of the debts due him from the estate, was of a date anterior to the 16th February, 1846. On the issue thus made, there were decrees of the Probate and of the District Courts. On appeal to this Court, it appeared the creditor, D. G.

Wheeler, had fully established one of his demands to be of a date anterior to the 16th February, 1846, viz: for thirteen hundred dollars, payable on demand, executed on the 21st June, 1845, with a credit of eighty dollars paid on the 14th July, 1845. The inventory of the estate of the deceased, amounting to eleven thousand two hundred and fifty-eight 16-100 dollars, was also exhibited. The return of sale was also in evidence, showing the amount to be four thousand eight hundred and fifty dollars; the balance of the inventory being the house and lot which had been the homestead of the deceased, and debts due the said deceased.

It was also proved that the deceased was indebted to the said Wheeler six thousand five hundred and seventy-five dollars and sixty-five cents, on an account contracted after the 16th February, 1846; and it appeared also, that, to withdraw the house and lot from the inventory of the deceased, would leave the estate insolvent for the sum of two thousand dollars.

On this state of facts, it was manifest that the applicants were not entitled to have the homestead, to the amount guaranteed by the Constitution, until the note of thirteen hundred dollars, with the interest thereon, was discharged, the same being prior to the Constitutional provision; and it appearing also, that, independent of the homestead, the assets were not sufficient for the payment of the debts, then, as long as any debts anterior to the Constitution remained undischarged, the applicants were entitled only to the homestead guaranteed by the Act of 1839; and accordingly, it was decreed that the value of the lot and improvements, as they existed at the death of Massie, should be ascertained; that the applicants should have one month after appraisement, to elect whether they would pay the excess of the value of the improvements over five hundred dollars; and should they do so, the house and lot were to be set apart for the use of the said Josephine and child; and on refusal of such payment, the lot and improvements were to be sold, and out of the proceeds, the value of the lot and five hundred dollars were to be paid to the said

Josephine for the use of herself and child, and the excess to be assets in the hands of the administrator, subject to debts contracted before the 16th February, 1846.

This decree being certified below, the value of the lot and improvements was ascertained, and a judgment entered in all respects in conformity with the mandate of the Supreme Court. From this the applicants appealed, and the judgment being affirmed, and mandate issued for its execution, and the plaintiffs having failed to make the payment within the term accorded by the decree, application was made to the County Court for the sale of the homestead. The plaintiffs again interposed obstacles to the execution, and alleged new matter, and attempted to make new issues, to the effect that there was nothing really due on the note of thirteen hundred dollars; that Massie, in his life time, had paid eight hundred and fifty dollars on the said note, and that his administrator had paid the said Wheeler seven hundred and seventy dollars, which together were sufficient to extinguish the said note. They charge fraudulent practices on the said creditor, in procuring the acceptance and allowance of his account of a date subsequent to the 16th February, 1846, and allege many matters, to the effect that the estate was really not insolvent, and that there was no necessity for the sale of the homestead.

The County Court having issued an order of sale, the cause was again carried by appeal to the District Court, and the judgment of the County Court being reversed for want of conformity to the decree of the Supreme Court, the District Court proceeded to render judgment, the most material point in which is that the sale of the house and lot was ordered to be on a credit of twelve months. In all other respects it is admitted to be in conformity with the decree of this Court. From this judgment both parties have appealed, the creditor contending that the sale should have been for cash; and the original plaintiffs have assigned various errors which need not be considered, as some of them are palpably absurd, and none of them, as legal propositions, are sound, when viewed with reference to the facts of this case.

None of the matters set up by the plaintiffs in opposition to the sale, were considered by either the County or District Courts, and it is very evident that they were not entitled to any consideration. The fact that there was such a debt as that due for thirteen hundred dollars on the note, had been directly in issue and it was adjudicated in favor of the creditor. This put an end to all controversy on that subject. The issue was closed, by being adjudged. The fact, as determined, could not, as between the same parties, be modified or varied in any material respect. If there had been payment of eight hundred and fifty dollars, as now alleged, in the lifetime of Massie, it should have been averred and established by proof. It was the fault and misfortune of the plaintiffs, that they did not avail themselves at the proper time, of this matter of defence. Had it been set up originally, however, it would still have been necessary to have sold the homestead. For it was in proof, and it was adjudicated as a fact, that if the house and lot were withdrawn, the estate would be insolvent for two thousand dollars. Had this payment, then, been established, it would still have been insolvent for nearly twelve hundred dollars; and the debt of the creditor, Wheeler, though diminished, could have been satisfied in no other mode than by the sale of the house and lot in question. The defences now set up, or the most of them, might have been urged at the trial; and this should have been done, to render them available. They cannot be used now, to affect or vary in any degree, the judgment already rendered in the cause.

The only question of importance, is that raised by the creditor, viz: whether the sale should have been for cash or on a credit of twelve months. By reference to the decree of the Supreme Court, it will be found that the lot and improvements are simply ordered to be sold, without directions as to whether the sale should be on credit or for cash. This left the terms of the sale to be regulated by law, if any such existed—if not, by such conditions as were appropriate to the object to be effected, and sanctioned by the analogies of the law, in

cases of a like character. Now, what was the primary object of this sale? Unquestionably to procure and have set apart to the widow and child of the deceased, such portion of the homestead as they were entitled to by law. The widow and child were entitled to a portion, and the creditors to the remainder of the homestead. It could not be partitioned except by sale. If it could have been divided without sale, the widow and child would have been placed in immediate possession, and as they are entitled to possession at once, when the *corpus* of the property can be delivered, so when a sale is required, their portion of the proceeds should be paid to them immediately. So far as they are concerned, the sale should be for cash; but, as lands and slaves, for the satisfaction of the creditors, can, as a general rule, be sold only on a credit of twelve months, the sale of the homestead, so far as the interests of the creditors are affected, should be on the usual credit, allowed by the statute. The law, Article 1171, authorizes sales of lands and slaves, when made to raise the allowance for the widow, be on such terms as the Court may direct. This vests a discretion in the Court, and we are of opinion that all the objects of such sales would be effected by requiring cash to the extent of the allowance to the widow and child, viz: to the sum of eight hundred dollars, and giving the usual credit of twelve months for the excess beyond the allowance. The judgment will be reversed and rendered so as to reform it in the particulars in which it is defective and to affirm it in other respects; the costs of this Court to be equally divided between the parties.

Ordered accordingly.