[Civ. No. 6450. First Appellate District, Division Two.—July 19, 1929.]

FRANK D. HALL et al., Respondents, v. W. S. KING, Appellant.

Derby, Sharp, Quinby & Tweedt and Derby, Single & Sharp for Appellant.

C. Harold Caulfield for Respondents.

THE COURT.—Plaintiffs recovered judgment upon two counts: First, $300 balance due upon a promissory note, together with attorney fees and costs, and, second, $500 for real estate broker's commission. Defendant appeals.

The plaintiffs sued in the style as above set forth in the title of this cause. The promissory note sued upon was made payable to the order of "Hall Baker Co." No assignment of the note from Hall Baker Co. to Hall & Baker was alleged or proven, but judgment was nevertheless given plaintiffs, apparently upon the theory that the payee of the note was in fact the plaintiffs above named. Defend-

ant's objection to the introduction of the note in evidence upon the ground of variance in this respect was overruled by the court.

Defendant pleaded as a special defense in his answer that plaintiffs had not filed a copartnership certificate as required by law. The court found this allegation to be untrue. Since the trial of the case the Supreme Court, in *Andrews* v. *Glick*, 205 Cal. 699 [272 Pac. 587], has held that the name Andrews-Cordano Plumbing Company was a designation not showing the names of the persons interested as partners in such business and, therefore, its sole members, Andrews and Cordano, were required to file a certificate under Civil Code, section 2466, showing the names of the persons interested in the company before maintaining that action. Under this authority and the cases cited therein, while the name *Hall & Baker* is not a fictitious name nor one not showing the names of the persons interested, the name Hall Baker Co. does come within the meaning of the section. The penalty for not filing the copartnership certificate is the inability of such firm or its assignee to maintain any action upon or on account of any contract or transaction had under such name. (Civ. Code, sec. 2468.) The promissory note sued upon in the first count of this action is, *prima facie*, such a contract or transaction because it was made payable to Hall Baker Co.

Upon the record it would be the duty of this court to reverse the judgment given upon the first count, which would result in a new trial upon the sole issue of whether the plaintiffs were barred from maintaining action upon this count because of having accepted the note made payable to Hall Baker Co. and thus doing business under a designation not showing the names of the persons interested as partners and without having filed and published the certificate as required by Civil Code, section 2466. Such an order for a partial new trial was made in *Rudneck* v. *Southern California M. & R. Co.*, 184 Cal. 274 [193 Pac. 775]. This court, desiring to avoid the disproportionate delay and expense of returning this $300 cause of action for a new trial, made an order on its own motion after submission and consideration of this appeal permitting the parties to produce in this court additional evidence upon this issue. The order was as broad in its terms as

permitted by section 956a of the Code of Civil Procedure and rule xxxviii of the rules of the Supreme Court and District Courts of Appeal. It would have permitted respondents to produce evidence that although the note happened to be made payable to Hall Baker Co., nevertheless the plaintiffs had in fact never done business under that name. The evidence produced and offered in this court, however, showed that respondents elected a different course. They produced documentary evidence in an effort to show that since the making of our said order and before the final hearing date for such additional evidence they had filed and published the certificate required by section 2466 of the Civil Code showing the names of the persons interested in Hall Baker Co. to be the respondents herein. However, the documents offered for that purpose are so inherently defective that no competent proof of the issue has been made and the judgment on the first count must be reversed.

The second count, as pleaded in the amended complaint, was in the form of *indebitatus assumpsit* for the agreed price of $500 for services of plaintiffs as real estate agents. Evidence under this count showed a transaction with the plaintiffs in the name of Hall & Baker which is not a fictitious name nor one not designating the persons interested in the partnership. Defendant does not claim and did not plead in his answer that other persons were interested in the partnership besides the two plaintiffs whose names appear in the designation Hall & Baker.

Plaintiffs' bill of particulars served upon defendant's demand set forth a writing executed by defendant on August 21, 1925, which, after dealing with other matters, read "should I at a later date want to sell the . . . above lot . . . Hall & Baker are to have an exclusive authorization so to do and in the event of sale their commission is to be $500." The bill stated that plaintiffs, acting on said last-quoted part of said agreement, undertook to sell said property, listing the same and in particular specifying the following services: That Baker had held several conversations with a prospective purchaser, Linehan; that plaintiffs did not recall the exact dates of said services, but alleged that they were between March 15 and May 14, 1926; that during said period plaintiff Hall advised defendant of said

efforts to sell; that thereafter defendants sold the property to said Linehan and had not paid plaintiffs the agreed commission.

The court found that plaintiffs were the procuring cause of said sale and gave plaintiffs judgment for the $500 commission accordingly.

The attitude of plaintiffs at the trial, as shown by their objections to testimony, was that they were entitled to the commission no matter to whom nor by whom nor how the property was sold so long as it was in fact sold. The court's findings, however, are that the plaintiffs were the procuring cause of the sale. On this appeal the argument of respondents runs along the line that plaintiffs were prevented from performing the contract by the sale of the property by the owner. We think the court's view was the correct one.

The agreement was an exclusive agency, not an agreement giving the exclusive right to sell. An exclusive agency agreement binds the owner to refrain from selling through any other real estate agent, but does not mean that he may not sell it himself personally and directly if he finds a purchaser on his own account. (*Waterman* v. *Boltinghouse*, 82 Cal. 659 [23 Pac. 195]; *Snook* v. *Page*, 29 Cal. App. 246 [155 Pac. 107]; *California Land Security Co.* v. *Ritchie*, 40 Cal. App. 246, 258 [180 Pac. 625].)

The written agreement is in an unusual form. Appellant claims it is only an agreement to employ plaintiffs at a future date. Plaintiff Baker's testimony was that when he told defendant that he was trying to sell to Linehan, defendant said, "That is good, try and sell it"; that when he asked defendant for a contract, defendant replied that none was necessary, that plaintiffs already had an agreement and that when the property was sold, no matter who sold it, plaintiffs would get the $500 commission. That he must have talked with defendant fifty times because he was in the office every day. In view of these conversations with defendant, the agreement to pay a commission is sufficiently proven. The writing is sufficient to satisfy the statute of frauds and the oral dealings of the parties interpret the writing as a present agreement to pay a commission. The agreement need not be entirely in writing. (*Toomy* v. *Dunphy*, 86 Cal. 639 [25 Pac. 130].)

■ The evidence is attacked as insufficient to show that plaintiffs were the procuring cause of the sale. It is claimed that plaintiffs did not perform the function of real estate brokers so as to entitle them to the commission, because they did not procure a contract of sale nor introduce the buyer to defendant nor obtain from Linehan, the purchaser, any declaration of willingness to buy. In this connection the evidence is analyzed in an attempt to demonstrate the plaintiffs' activities were on and after March 15th, while defendant's sale to Linehan was before that time, to wit, on March 11th, pursuant to conversations on the 8th and 9th. The testimony on this point was substantially as follows:

Plaintiff Hall had one conversation with Linehan when he came into plaintiffs' office in the presence of Mr. Otto Nagel of the Mercantile Trust Company. This he said was in the latter part of March, 1926. He subsequently reported this to defendant, who said, "That is good." Plaintiff Baker said he had his first conversation with Linehan in which he urged Linehan to buy the property, "about March 15th, the first of March, 1926, around there somewhere." This was on the street in the presence of Nagel. That he had three or four more conversations with Linehan along the same line. On cross-examination he said his first conversation could have been between the first of the year to March. That Linehan put him off; that he reported to defendant King, who said, "That is good, try to sell it to him." Nagel testified also that he was present at the conversation between Hall and Linehan and between Baker and Linehan; that plaintiffs praised the property, urging Linehan to buy it, Linehan asking questions about it, feeling them out as to their idea on the property. Without specifying the date, Nagel said Linehan came to him and persuaded him to negotiate with defendant for the sale, stating that he had a client, Dr. Wall, who would buy and that he did not want to go directly to defendant for fear he would boost the price. Nagel did so and found King willing to sell. Two or three days later, which was March 11th, Nagel being branch manager of the bank, issued a cashier's check at Linehan's request and drew up a receipt which defendant King and wife signed, acknowledging receipt of $2,650 from Mercantile Trust Company as first payment

on the purchase price of the property and specifying terms of sale. Two months later, on May 14, 1926, the deal was closed through a title company by delivery of a deed. King testified that not until he signed this deed on the day last named did he know that anyone other than the Mercantile Trust Company was the purchaser. The deed was made to Seymour and Linehan and wife, at the request of the title company. King testified that he had had no previous negotiations or dealings with Linehan and did not know that Nagel nor Mercantile Trust Company were acting for Linehan.

Now as to the dates of the services of plaintiffs in endeavoring to sell to Linehan, it is to be noticed that plaintiff Baker's testimony does not definitely place them on and subsequent to March 15th, but states they could be prior. Nagel does not fix the date. Asked if he went to plaintiff's office with Linehan after the $2,650 deposit was made, Nagel said he did not know. Baker's testimony, that defendant said go ahead and sell to Linehan when informed of Baker's efforts in that direction, certainly indicates plaintiffs' dealing with Linehan antedated Nagel's deposit receipt of March 11th. In view of the uncertainty of dates we must assume that the court believed Baker's testimony and that at the time he reported his activities to King, the latter had not yet signed the binding receipt to sell to the Mercantile Trust Company.

The foregoing facts were competent to prove that plaintiffs first interested Linehan in the purchase of the property, that he was moved by the interest thus aroused in him by the plaintiffs and went about the business of purchasing the property from the owner through the bank or Nagel without further use of the plaintiffs' services. His exact reasons for doing this are not shown. They are not material because it does not appear that his action in so doing was caused by any neglect of a broker's duties on the part of the plaintiffs. The evidence, therefore, supports the court's finding that plaintiffs were the procuring cause of the sale. The broker's duties which must be performed in order to earn the commission are fully defined in *Twogood* v. *Monnette,* 191 Cal. 103, 107 [215 Pac. 542], and the plaintiff's services in this case come within its terms. They

found a purchaser who proved ready and willing to buy and who did buy.

If it is true, as contended by appellant, that he did not know, when he agreed to sell to Mercantile Trust Company, that the real purchaser was the same Linehan whom respondents had worked on and spoken to appellant about, that fact would not subtract anything from the services performed by the respondents. Inasmuch as the sale was made to the purchaser found by the respondents, under the circumstances of this case, it is not necessary for respondents to argue that appellant prevented a sale by them, but only that appellant accomplished the sale to the purchaser first found by them.

■ Appellant contends that the judgment is erroneous in that it is based upon an express contract while the complaint declares upon a common count. We are not able to find that this point was raised at the trial and in view of the bill of particulars served we cannot see how appellant was in any way prejudiced if in fact it amounted to a variance. It has been held that an express contract which has been fully executed and under which nothing remains to be done by defendant except the payment of money, which is nothing more than the law would imply against him, may be declared upon in *indebitatus assumpsit* at the option of the plaintiffs. (*Castagnino* v. *Balletta,* 82 Cal. 250, 258 [23 Pac. 127], quoting Greenleaf on Evidence; *Willett & Burr* v. *Alpert,* 181 Cal. 652, 659 [185 Pac. 976], quoting 5 Cor. Jur. 1386–1388.) Such is the nature of the contract sued upon here. The judgment was given upon that theory, i. e., for a money debt due upon a contract duly performed by respondents.

The judgment upon the second count is, therefore, affirmed and the judgment upon the first count is reversed, with direction to the trial court to retry the sole issue of respondents' right to maintain the action upon the note in suit, neither party to recover costs on appeal.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 16, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 12, 1929.

All the Justices present concurred.