### FIRST ·NAT. BANK IN DALLAS v. TRINITY PATRICK LODGE NO. 7, K. OF P.

No. 15218.

Court of Civil Appeals of Texas.
Fort Worth.

March 16, 1951.

Rehearing Denied April 13, 1951.

W. D. Garnett, of Gainesville, Coke & Coke and Thomas G. Murnane, all of Dallas, for appellant.

Robert G. Scofield, Ray Winder and Cecil Murphy, all of Gainesville, for appellee.

CULVER, Justice.

On January 21, 1943, the Trustees of Trinity Patrick Lodge No. 7, Knights of Pythias in Gainesville, executed a renewal note in the principal sum of $10,000, payable to the Trustees of the Leeper estate, bearing interest at four per cent due on or before five years and secured by a vendor's and deed of trust lien against the Lodge property. In 1949, two of the three Leeper trustees being dead and the third having theretofore resigned, in accordance with the will of Mrs. Leeper the First National Bank of Dallas took over the affairs of the Leeper estate as successor executor and trustee. Thereafter in August, 1949, the Bank, claiming a balance due of approximately $8,000, caused the property to be sold under the terms of the deed of trust and bought it in for the benefit of the estate.

The Lodge trustees brought this suit to set aside the sale under the deed of trust, alleging that in February, 1945, they had entered into an oral agreement with the original Leeper trustees and executors, Bringman, Simpson and Bennett by the terms of which the principal of the note would be reduced to $7500 as of the date of its execution, payments theretofore made would be applied in reduction of the amount of $7500, that no interest would thereafter be charged, that the Lodge trustees would look after and maintain the property and pay over to the Leeper trustees annually the net income from the property and ultimately extinguish the debt in that manner. Although according to the terms of this oral agreement no balance was due on the obligation at the time of the filing of this suit, the plaintiffs prayed that the amount of the balance be fixed by the court and offered to pay such balance.

Upon the trial of the case to the court, judgment was entered in favor of the Lodge trustees, upholding the terms of the oral agreement, setting aside the sale under the deed of trust, fixing the amount of the balance due on the note to First National Bank Trustee in the sum of $2744, and providing that the Lodge trustees would have thirty days thereafter in which to pay over said sum and in the event of default on the part of the Lodge trustees the Bank as trustee would be entitled to sell the property under execution.

From this judgment the Bank as trustee appeals, asserting that the trial court erred in holding: (1) that the oral agreement of February, 1945, constituted an accord and satisfaction; (2) that the oral agreement does not violate the statute of frauds and that the bank was estopped to repudiate said agreement because of part performance and resulting wrong and injustice; (3) that the Lodge trustees and the Leeper trustees were legally authorized to enter into such an oral agreement; (4) that all powers conferred upon the bank and trusts imposed upon it were annexed to the office of executor and none to a distinct office of trustee; and (5) in allowing plaintiffs thirty days after the rendition of the judgment within which to tender the defendant the sum of $2774.

Finally, appellant complains of the admission of certain verbal and documentary evidence.

The trial court found that the oral agreement as claimed by the Lodge trustees had been made between the parties and we think the controlling questions may be summarized as follows: (a) Was the oral agreement in violation of Sections 4 or 5 of the Statute of Frauds, Vernon's Civ.St. Art. 3995, which inhibit an oral contract for the sale of real estate and an oral agreement not to be performed within the space of one year from the making thereof? (b) If such agreement is within the Statute of Frauds, then is the Bank as successor trustee estopped to repudiate said agreement because of part performance and resulting injustice? (c) Were the Lodge trustees and the Leeper trustees legally authorized to make the alleged oral agreement?

The finding of the trial court with respect to such agreement is as follows: "On or about February 8, 1945, it was orally agreed by and between plaintiff and said executors and trustees that plaintiff would manage, control and attend to the renting and maintenance of said lodge property and annually pay over to the Leeper estate the net income therefrom, after having deducted the maintenance expenses, including the costs of repairs, taxes, insurance and utility charges, and until the indebtedness owing was paid, in consideration of the reduction of the principal amount of said indebtedness as of January 1, 1943, from $10,000 to $7,500, crediting said $7,500 with all payments made subsequent to January 1, 1943, including $650 paid in January, 1943, $1,000 paid in January, 1944 and $500 paid in January, 1945, aggregating $2,150, and the waiving of all interest on said obligation by said Leeper estate, in lieu of plaintiff's obligation and liability on said note."

The evidence showed that in 1945, and at all times thereafter up to the trial of the case, the property was producing a gross rental of about $170 per month. We think such agreement is within the Statute of Frauds and is one "not to be performed within the space of one year from the making thereof." The balance due at the time of and according to the terms of the oral

agreement was $5,350. The gross annual rental could not be more than $2,000 and only the net rentals were to be applied "annually." "A verbal contract or agreement which, although it stipulates no definite time for its performance, will of necessity, according to a reasonable interpretation of its terms, require more than a year for its performance is within the statute and void." 37 C.J.S., Frauds, Statute of, § 52, p. 561. See also Johnson v. Wallace, Tex.Civ.App., 191 S.W.2d 487. "The possibility of performance within one year must be such as can fairly and reasonably be said to have been within the contemplation of the parties; an unforeseen or remote possibility is not sufficient." 37 C.J.S., Frauds, Statute of, § 50, p. 559.

■ Appellee Lodge trustees insist that the contract was possible of performance within one year because there might have been made a five or ten year lease with one or more tenants, collecting all rentals in advance, which would have been sufficient to pay off the balance due. We regard such a possibility as one so remote and unforeseen as to have been entirely beyond the contemplation of the parties. The use of the term "annually" would imply that performance of the contract would extend over a period of years. Ellison v. Halff, Tex.Civ.App., 94 S.W.2d 528.

■ We are also of the opinion that the oral agreement violates Section 4 of the Statute of Frauds and the contract must be stricken down for that reason.

■ In Kistler v. Latham, Tex.Com. App., 255 S.W. 983, 985, it is said: "It cannot be questioned but that where the consideration for a contract comes within the statute of fraud, such consideration must be evidenced by a contract or memorandum in writing." And again, "Expenditures of money upon the faith of a verbal contract or verbal modification * * * within the statute of fraud is not sufficient to take the contract out of the operation of the statute." See also Castro v. Illies, 13 Tex. 229; Boehl v. Wadgymar, 54 Tex. 589; Hooks v. Bridgwater, 11 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216; Clegg v. Brannan, 111 Tex. 367, 234 S.W. 1076; Ward v. Etier, 113 Tex. 83, 251 S.W. 1028. Citing the case of Kistler v. Latham, supra, the Dallas Court of Civil Appeals in Schofield v. Pyron, 257 S.W. 350, in a case involving a somewhat similar state of facts, held to the same effect. In Epstein v. D. & A. Oppenheimer, Tex.Civ.App., 94 S.W.2d 779, 780, in a foreclosure suit on two promissory notes, the defendants pleaded an oral agreement to the effect that they would put substantial improvements upon the property, the plaintiff would carry and extend the interest on said indebtedness until such time as the rents and revenues from said property so improved would be sufficient to pay such interest and to extend the principal thereof at maturity a reasonable length of time. They further alleged that relying upon such promise and agreement, the contemplated improvements had been completed. Affirming the trial court's action in sustaining a general demurrer to defendant's allegations the court said: "The rule seems to be well settled that where, as in this case, the consideration for a contract is required by the statute of frauds to be in writing, and is so expressed, it cannot be modified by a subsequent parol agreement." See cases cited. See also Gardner v. Sittig, Tex.Com.App., 222 S.W. 1090.

■ The trial court made the following conclusion of law: "The said agreement of date February 8, 1945, did not provide that it was not performable within one year, and the performance of it being in fact possible within one year, and the plaintiff in reliance on said agreement having so far performed its part thereof that it would now constitute a grave wrong and injustice to plaintiff to permit the defendant to repudiate said agreement, and not enforce it, the said agreement was and is not in violation of the Statute of Frauds." We presume that the trial court has reference to both Sections 4 and 5 of said Statute. It is the general rule that contracts within the Statute of Frauds cannot be modified by subsequent parol agreements between the parties though an exception to the rule is found where the party relying on the oral agreement has performed his undertaking thereunder, so that a refusal to enforce the modified agreement would result in wrong

to him. Minchen v. Vernor's Ginger Ale Co. of Houston, Tex.Civ.App., 198 S.W.2d 613, and cases cited therein on this point.

We are of the opinion that the evidence does not bear out any finding or conclusion that a failure to enforce this oral contract would constitute a "grave wrong and injustice" to the appellees, the Lodge trustees. They, the Lodge trustees, by the terms of the oral agreement, were to maintain and look after the building, pay the taxes and insurance, collect the rentals and pay over what was left each year to the Leeper trustees. The Lodge trustees were obligated to do all of these things before making any oral agreement, except the paying over of the net rentals. The note provided for four per cent interest, payable annually, the principal of the note being due in February, 1948. The evidence shows that the Lodge trustees operated exactly after making the oral contract as they had before. The Lodge owned the real estate, was liable for taxes and insurance, and it was necessarily the duty of the trustees to collect the rentals and maintain and look after the property at all times. The trustees had, prior to the oral agreement, each year on the note paid more than the interest, exercising the option to pay "on or before," and in the three years subsequent to the oral agreement and before the note became due paid some $700 more than the amount of the interest for that period of time.

In the recent case of Chevalier v. Lane's Inc, 147 Tex. 106, 213 S.W.2d 530, 533, 6 A.L.R.2d 1045, in an opinion by the Supreme Court, Justice Garwood writes a rather exhaustive opinion, and while that case only involved an employment contract, the opinion reviews many of the leading decisions in Texas on the question of the applicability of the Statute of Frauds to oral contracts, and some of his expressed views are regarded as being applicable to the case at hand. He says, in part: "Enforcing a forbidden parol agreement notwithstanding the Statute is not just a matter of relieving against hardship. The legislature naturally contemplated that such a statute would impose hardship on those who might contract in ignorance of its terms. But the Statute unmistakably declares a policy that parol testimony is too unreliable for proof of certain types of agreement, and courts must give heed to that policy as well as to considerations of an equitable character."

The Statute of Frauds would seem to be designed to cover just such a situation as is presented in this case. Four years had elapsed after the making of the oral contract when the case came on for trial. Two of the original Leeper trustees were dead. The third, Bennett, who had resigned in October, 1945, was not called to testify by either party. The testimony of plaintiffs' witnesses was to the effect that the oral contract was made with trustee Bringman. The only showing that such agreement was concurred in by the other trustees was a statement made by the witness Brazelton that after Bringman's death, which occurred April, 1945, he made the payments to trustee Simpson and that the first time he saw Simpson after Bringman's death, Brazelton testified, "I told him just what I have told you and he (Simpson) said that was all right with him." We see no wrong or injustice that would operate to the Lodge or its trustees in refusing to enforce this oral contract.

Appellees cite the case of Wright v. Donaubauer, 137 Tex. 473, 154 S.W. 2d 637, 639, in which the court upholds an oral modification of the terms of payment of a vendor's lien note, which oral agreement provided in effect that the payors would do certain work for the payee and receive credit of $100 at every payment period and provided that if the payee died before the note was paid in full the balance would be canceled. Justice Sharp in deciding this case says: "By the terms of the contract, same would be terminated by the death of Leonards, which might have occurred at any time after the making of the contract. This contingency might have happened in less than a year after the making of the contract, and on its happening would have terminated the contract." He then upholds the contract as not being violative of Section 5 of the Statute of Frauds, Article 3995, R.C.S.,1925, in that the plaintiff below had set out a cause of action good as against demurrer and special exceptions.

We think the case of Wright v. Donaubauer, supra, is distinguishable from the one under consideration here. The petition in that case alleged an oral agreement completely executed, the work and labor performed and the payee deceased before payment in full to him.

 In our opinion there is nothing in the evidence to show that the Lodge trustees were authorized to convey the Lodge property, to offer to convey the same, or to make a new contract on behalf of the Lodge. The original note and lien had been expressly authorized by formal resolution of the Lodge. The minutes of the meeting of the Lodge of February 8, 1945, the date found by the trial court as being the day of the making of the oral contract or modification, were in evidence. The only reference to any oral agreement was the following entry: "The Lodge was told that Mr. Bringman as executor of the Leeper estate had agreed to accept the sum of $7500 in full payment of the debt." The minutes then showed the election of the officers for the ensuing year, whose names were set forth, and following the names of the trustees elected the minutes concluded with the statement: "They to have full charge and discretion and authority over all matters affecting the interest of the body and its property." So far as the minutes reveal the membership of the Lodge was not even informed of the terms of the oral agreement, nor was it ratified or approved by the Lodge.

With reference to the fourth point upon which the bank predicates its appeal, the trial court concluded "all powers conferred upon the First National Bank in Dallas as successor executor and trustee under the Last Will of Nettie C. Leeper, deceased, and all trusts imposed upon it, were annexed to the office of executor, and none to a distinct office of trusts." And therefore further concludes that the bank was not legally authorized to demand payment of the balance due on the original note, nor to have the property sold under the deed of trust. Mrs. Leeper's will is clear and explicit, providing that if the three original executors and trustees shall die or resign, she appoints the First National Bank in Dallas "as their successor both as executor under this will and as trustee." It was shown after the death of two of the trustees and the resignation of the third, that the bank had never qualified as executor, but had accepted the trust under the will and proceeded to carry out the terms of the will. The trial court awards the bank judgment for the balance he finds due under the oral contract and provides in his judgment that in the event such balance is not paid by the Lodge Trustees within thirty days, the bank should have its execution to enforce the same. If the bank had the authority to demand and receive the balance due under the oral contract, we can see no reason why it would not have the authority to demand payment of the original note and proceed to enforce payment.

We therefore sustain appellant's points 1, 2, 3 and 4. The other matters raised in the appeal are now considered to be immaterial.

The judgment of the trial court is reversed and judgment here rendered that appellees take nothing by their suit, that the deed of trust sale be confirmed, that the cloud cast upon appellant's title be removed and that all costs, both in the trial court and in this court, be taxed against appellees.