[Civ. No. 8172.   Third Dist.   Oct. 30, 1952.]

WALTER L. HARCOURT, Appellant, v. STOCKTON FOOD PRODUCTS, INC. (a Corporation), Respondent.

C. P. Dorr for Appellant.

Evans, O'Gara & McGuire for Respondent.

PEEK, J.—This is an appeal by plaintiff from a judgment in favor of defendant in an action by plaintiff to recover brokerage fees. The appeal is on a settled statement of facts in lieu of transcripts under rule 7(b) of the Rules on Appeal.

The settled statement discloses that appellant is an individual engaged in the business of food brokerage in San Francisco. Respondent is a canning company with its principal place of business in Stockton.

In May of 1946, after negotiations, the parties entered into an agreement reading:

"May 13, 1946.

"STOCKTON FOOD PRODUCTS, INC.
Stockton, California.

Attention: Mr. W. A. Bundy

"Dear Mr. Bundy:

"This letter will confirm our arrangement for the 1946 season.

"You appoint us your Exclusive Sales Agent for one-half of your total production of Canned Goods during 1946 and will pay us a brokerage of 5% on the gross sales thereof. The foregoing sentence means that one-half of each item packed by you in the period shall be sold exclusively through us under this agreement. All sales will be made on standard contract forms with the usual terms and conditions.

"We agree to exercise our best ability to successfully merchandise the pack at the most advantageous prices consistent with any ceilings that may be in effect and you will keep us advised continually of the status and size of the pack so that commitments we make will be proper. You will also keep us advised of your O.P.A. ceiling prices.

"It is understood all sales shall be subject to your final confirmation.

"As a convenience to you we hereby agree to invoice buyers and effect collections for shipments made for your account.

"If the foregoing meets with your approval, kindly sign one copy in the lower left hand side and return to us.

Yours very truly,

HARCOURT GREENE CO.,

W. L. HARCOURT

"Accepted and approved:

STOCKTON FOOD PRODUCTS, INC.,

By W. A. BUNDY

President."

Shortly before the end of the fiscal year covered by this first agreement, the parties entered into a written agreement covering the 1947-1948 period. This agreement reads:

"May 26, 1947.

"STOCKTON FOOD PRODUCTS, INC.,

Filbert and Miner Streets,

Stockton, California

Attention: Mr. W. A. Bundy

President.

"Dear Mr. Bundy:

"This will confirm the verbal conversation which the writer had with you in your office at Stockton on Thursday, May 22nd.

"It is our understanding that you have appointed us as your Exclusive Sales Agents for the sales of your products any place in the United States and throughout the world, with the exception of possibly one half of your pack of Tomato Paste and Peeled Tomatoes, which you are reserving for sale through Dick Salamone, in New York City, and part of your pack of Cherries which may or may not be sold through the Mel-Williams Co. We understand that it is also agreeable to you that we imprint our letterhead showing this company as Sales Agents for the Stockton Food Products, Inc., and to put the name of the Stockton Food Products, Inc., on the door of our offices.

"The above arrangement, we understand, will apply to and be in effect for the 1947 pack and to extend from June 1st, 1947 to May 31st, 1948, which latter date, we understand, is the end of your fiscal year.

"You have agreed to keep us promptly and properly informed as to your pack from day to day by means of mailing to us each day a copy of your Daily Pack Record and Report.

"On all sales completely negotiated and shipped and paid

for by buyers, we are to receive a brokerage of 5% of the gross selling price.

"On our part, we agree to aggressively, diligently, and honestly represent you and shall endeavor at all times to promote and further the interests of the Stockton Food Products, Inc.

"If the above is in accordance with your recollection and understanding of our conversation and agreement, would appreciate your initialing the enclosed copy and returning it to us for our memorandum record.

"With kind regards from the writer, we are

> Yours very truly,
> HARCOURT GREENE Co.
> /s/ W. L. HARCOURT

"O K

/s/ W. A. Bundy"

During the period covered by this agreement appellant received daily pack records as well as weekly pack records. ▉ Also during this period while appellant was making sales of respondent's products, the respondent was also on divers occasions selling direct through other outlets. However, during the entire period in question respondent first offered its merchandise to appellant and only sold through other outlets when appellant failed, neglected or was unable to do so.

It was stipulated that during the course of this relationship the appellant handled other canned goods under his own label as a principal and also as agent for other canners "which were directly competitive with the goods produced by respondent." The evidence indicates that when appellant received an order for canned goods he did not consider himself obligated to sell respondent's goods in preference to those of other competitive products he was handling.

The evidence also shows that an officer of the respondent upbraided appellant for not doing a "good job" under the 1947-1948 agreement and appellant admitted such to be the case, stating he had been occupied with other matters, but promised to do better.

The appellant was fully paid for all of the goods he himself sold for respondent and made no demands upon respondent for brokerage due on sales made by respondent through other outlets prior to the filing of the instant suit.

Prior to the filing of the present suit appellant filed suit on January 3, 1949, in the Superior Court of San Joaquin County, No. 45168 against respondent. The first count was for brokerage allegedly due. On March 16, 1949 this action was dismissed with prejudice. The evidence revealed that this action was settled out of court for a sum in excess of $12,000. "The attorney for appellant herein stated to the then attorney for respondent herein that the payment of this sum constituted the settlement of all the claims existing between Walter L. Harcourt doing business as Harcourt-Greene Company and Stockton Foods Products, Inc." Appellant admitted that during this settlement he made no demand for other alleged brokerage due.

The present action was filed by appellant on October 26, 1949, several months after said settlement. The complaint was in four counts. The second count was dismissed, the fourth count was abandoned. In the remaining counts appellant seeks to recover damages for alleged breaches of written and oral agency contracts, the damages being the brokerage fees allegedly due on sales made by respondent through outlets other than appellant. The prayer limits the recovery to $15,000 on each of the two contractual periods involved.

It is appellant's contention on appeal that the effect of the contracts here in question was to give him the exclusive right to sell respondent's products. Hence he is entitled to a commission on all sales, including those made by respondent. The essence of such contention is that the evidence is insufficient to support the contrary conclusion reached by the trial court.

■ It is the well settled rule that generally if the agency established is an "exclusive agency" the principal retains the right to dispose of the property by his own efforts, and if a sale be consummated pursuant to such independent efforts by the owner the agent is not entitled to a commission thereon. ■ On the other hand if the agency established gives the agent the "exclusive right of sale" generally the principal is liable for the agent's commission whether or not the agent's services contributed to such sale, since under the terms of such a contract the agent is the only person entitled to sell the property. (See *Golden Gate Packing Co.* v. *Farmers' Union,* 55 Cal. 606; *Chamberlin* v. *Gallucci,* 110 Cal.App. 71 [293 P. 642]; *Hall* v. *King,* 100 Cal.App. 70 [279 P. 814]; *Faith* v. *Meisetschlager,* 45 Cal.App. 7 [187 P. 61]; 1 Cal.Jur. 812, § 96; 4 Cal.Jur. 607, § 40.)

The distinction is clearly set forth in *Wilck* v. *Herbert*, 78 Cal.App.2d 392, where the court at page 413 [178 P.2d 25] said:

". . . 'The use of the words "exclusive agency" or "exclusive sale" is not conclusive but, as in other cases involving interpretation, all the circumstances must be considered.' In *Snook* v. *Page*, 29 Cal.App. 246, the court said, at page 247 [155 P. 107] : 'The first question. . . is whether the plaintiffs were constituted the *exclusive agents* or were they given the exclusive *right* to sell said property. If the former only, the rule is well settled that "the owner has the right to sell the same by his own unaided efforts without becoming liable to the broker for commission; that the only effect of such contract is to prevent the owner from placing the property in the hands of another agent and that the owner does not thereby relinquish his right to sell the property independently of the broker.'' ' ''

Considering then all of the circumstances and the evidence as disclosed by the record in the light most favorable to the respondent, we conclude that appellant's contention is not well founded.

Furthermore, the conduct of the parties under a contract with knowledge of the terms thereof and prior to any controversy is entitled to great weight in determining its proper construction. (*Barham* v. *Barham*, 33 Cal.2d 416 [202 P.2d 289].)

Here it is shown that during the entire period of contractual relationship between the parties Harcourt handled other canned goods under his own label as a principal and also acted as agent for other canners whose products were directly competitive with respondent's products. In fact, it was appellant's testimony that he did not consider himself under obligation to sell respondent's goods in preference to those of competitive products he was handling. Also during this period respondent canning company made sales direct to certain companies handling its products. There is, however, nothing in the record to show that respondent ever appointed or made any sales through a second agent.

The judgment is affirmed.

Van Dyke, J., and Schottky, J. pro tem., concurred.