Homer A. PARKS et ux., Appellants,

v.

Billy UNDERWOOD et al., Appellees.

No. 14859.

Court of Civil Appeals of Texas.

Dallas.

May 13, 1955.

Rehearing Denied June 10, 1955.

Brundidge, Fountain, Elliott & Bateman, Dallas, for appellants.

Jones, Phillips & Watkins and Spafford & Spafford, Dallas, for appellees.

CRAMER, Justice.

Our former opinions are withdrawn, and new opinions substituted therefor:

Appellee Underwood, a licensed real estate agent, filed this suit against appellant Parks and wife to recover $1,125 as a real estate commission plus a reasonable attorney's fee and court costs, alleged to have been earned by him when he effected the sale of property listed with him by Parks. He alleged that he made a sale to Alfred E. Sellmeyer and that the sale was made (1) within the limited period of a written exclusive agency contract, and (2) if not, then thereafter to one with whom negotiations were begun during the period of such listing.

The written listing contract alleged and as introduced in evidence was as follows:

"Owner: Homer Parks. Price: $23,500.00. Address: 4101 Rosa Road, Phone DI–4177 Section WH age 3 Bedrooms: 4 Stories: 1 Baths 1½ Tiled: Yes BK fst. Rm: Area Den: Yes Construction: Brick Screen Porches: W. B. Fire: 2 Windows SDH Attic Fan: Yes Insulation: Yes Walls: SRT Roof: CS Arch: Ranch Listed by: J. A. Crawford Date: 3–14–52.

"I authorize Billy Underwood my exclusive agent for 45 days to sell my property described above, for $23,500.-00. I agree to pay 5 per cent commission of said purchase price or any price accepted by me and I agree to furnish guaranteed title policy and make proper conveyance at my expense. Signed Mrs. H. A. Parks."[1]

The trial court after hearing all the evidence submitted the case to a jury on special issues to which the jury answered: (1) Homer Parks authorized Mrs. Parks to enter into the listing contract in question; (2) Mrs. Parks had apparent authority to enter into the listing contract; (3) the listing contract was signed Feb. 13, 1952; (4) that prior to the expiration date of the listing contract Mrs. Parks orally agreed to pay Underwood a commission of 5% of the sales price on any sale made after the expiration date of the listing contract; (5) Underwood was the procuring cause of the sale; (6) Mrs. Parks had apparent authority to enter into the commission contract to pay 5% on any sale after the expiration of the listing contract in which Underwood was the procuring cause; (7) a reasonable attorney's fee for Underwood in this case was $500; (8) that the listing contract was not signed before Feb. 12, 1952; (9) that Homer Parks and his wife before agreeing to sell the property to Sellmeyer inquired of Sellmeyer as to whether or not any real estate agent had informed him the property was for sale; (10) and whether he had looked at the property in question because of the efforts of any real estate agent; (11) that in response to the inquiry Sellmeyer told Parks and wife that no real estate agent was involved in causing him to become interested in said property; (12) that such statement was false; (13) that Parks and wife relied on said representation in making the sale to Sellmeyer; and (14) that such statement did not cause Parks and wife to sell the property at a lesser sum than they would have otherwise sold it for.

On the verdict the court rendered the judgment against Parks and he has duly perfected this appeal, briefing four points of error.

The first point asserts the written listing does not locate the property in any State, County, or City and therefore does not comply with the statute of frauds, art. 6573a, § 22, R.C.S., Vernon's Ann.Civ.St., and is therefore barred by the statute, no matter when the negotiations were begun or con-

[1] Date was 2–14–52, not 3–14–52, as shown in the Transcript.

cluded; that the written listing could not form the basis of an enforceable verbal agreement effective as of its expiration date. This point was countered that the written listing sufficiently describes the property under the statute. Appellants cite under this point: Tidwell v. Cheshier, Tex.Sup., 265 S.W.2d 568; Broaddus v. Grout, Tex.Sup., 258 S.W.2d 308; Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150; Hereford v. Tilson, 145 Tex. 600, 200 S.W.2d 985; Frazier v. Lambert, 53 Tex.Civ.App. 506, 115 S.W. 1174; Elliott v. Henck, Tex.Civ.App., 223 S.W.2d 292; Loring v. Peacock, Tex.Civ. App., 236 S.W.2d 876; Seaboalt v. Vandaveer, Tex.Civ.App., 231 S.W.2d 665. Appellees cite: Jones v. Smith, Tex.Civ.App., 231 S.W.2d 1003; Pickett v. Bishop, 148 Tex. 207, 223 S.W.2d 222; Shook v. Parton, Tex.Civ.App., 211 S.W.2d 368; Wilson v. Fisher, supra; and Dickson v. Kelley, Tex.Civ.App., 193 S.W.2d 256.

We have read and considered each of the cases cited by the parties and have decided that the rule stated in three of our Supreme Court's opinions, to wit: Pickett v. Bishop, Broaddus v. Grout, and Tidwell v. Cheshier, control the point here involved and settle the question as to the information necessary in a written contract under our statute. The description must be set out with such definiteness that from the information given in the listing contract the property can be located with certainty. The only information given in the contract here is that the property is located at 4101 Rosa Road; is owned by Homer Parks and his wife, and contains a detailed description of the construction, number of rooms, improvements, age, etc., of the house. The oral evidence shows there was no misunderstanding by the parties as to the property to be covered by the contract. It was the property owned by the Parks, and the property owned by the Parks was located at 4101 Rosa Road which the parties stipulated is in Dallas, Texas.

In our opinion the written memorandum required by the statute as to the description of the property covered by the contract must by its written terms alone furnish definite information which will, by following such information to its source, identify the real estate listed with the agent with such definiteness that it may be distinguished from all other tracts of land, in other words the language used must refer to only one tract of land, clear as to location and boundaries. Our courts have held that where the State, County and City are not referred to in the contract, it must then refer to the owner and describe the property with such certainty that it could not refer to any property save that owned by seller at a certain location set out in the contract, and which property could not in its description conflict in any material way with the description in the contract.

The parties here stipulated during the trial as follows:

"Mr. Jones: It is stipulated by and between the parties that 4101 Rosa Road is in Dallas County, Texas, and is the only property that was owned by Mr. and Mrs. Parks on Rosa Road in Dallas County, Texas, on any of the dates in question.

"Mr. Fountain: We will stipulate that."

In our opinion the stipulation taken with the other evidence in the record complies with our statute and is sufficient to justify its enforcement. Point 1 is overruled.

Points 2 and 3 will be considered together. They assert (2) that since the listing was for a sale within 45 days only, it expired March 29, 1952 before the sale to Sellmeyer on March 30, and therefore furnishes no basis for recovery; and (3) the verbal extension agreement, even though made during the 45-day period, was insufficient to meet the requirements of section 22, art. 6573a, R.C.S. Appellee counters (2) that he procured the purchaser on the last day of the contract term, to wit, March 29, and that such purchaser was covered by the contract even though the sale was made the next day after the listing expired; and (3) the oral extension of the contract before it expired was valid.

The record shows that about a week before the sale to Sellmeyer, Mrs. Parks called Underwood's office and asked if the exclusive contract had run out and was told he did not know. Underwood also testified he asked Mrs. Parks if after the exclusive listing ran out, he could continue to show the property as agent and she informed him that he certainly could and that she would pay the regular commission on any purchaser he might secure. Underwood testified he asked Parks if after the exclusive listing ran out, he could continue to show the property as agent, and he testified on cross-examination as follows:

"Q. State what conversation you had with her in regard to that. A. I told her when I couldn't find the listing, she—we agreed it would possibly run out within a week or two. I said, 'Well, of course, when that listing, exclusive listing contract expires, you are going to keep the house on the market and I would like to continue showing it as your agent,' and she said, 'You certainly can, and I will pay you the regular commission on any purchaser that you secure.' * * *

"Mr. Spafford: You still continued the exclusive listing, was that to be extended? A. No, sir.

"Q. That was not to be extended, was it? A. Not the exclusive.

"Q. What you are saying, your arrangement was entered into with Mrs. Parks, was not an exclusive arrangement, right? A. That is right. * * *

"Q. (By Mr. Jones) This agreement whereby you were to receive compensation for anyone that you had interested in the property after the listing had run out, was that in regard to the same property that is on the listing there, that has been introduced here as plaintiff's Exhibit 1 and listed in that agreement? A. Yes, sir. * * *

"Q. (By Mr. Jones) What was the agreement, if any, with regard to any people you interested in the property after the exclusive ran out? * * *

A. On the occasion that we discussed the exclusive, we agreed that it ran out in a week or two and she said even after the exclusive was to expire, that at that time it would be on a non-exclusive basis, that she would pay me for my prospects, or any sale or any client that I had produced thereby through my efforts, and I would be paid my five percent commission."

It is true there is authority in Texas to the effect that a subsequent oral modification of a written contract so as to effect an extension of the time for payment is valid and not within the statute if made before the contract by its provisions has terminated. Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 132 S.W.2d 553, 164 S.W.2d 488, see Note, 27 Texas Law Review 268. However, it is our opinion that such question there discussed is not material to the cause here. The record here shows that the original contract was orally modified not only as to time, but other provisions thereof were changed, to wit, a change from an exclusive to a nonexclusive listing, and shows on its face that such change was not only for the purpose of extending the expiration date to the one prospect contacted before the contract expired, but changing the listing to a general listing upon new terms. It was therefore a parol modification of the material terms of the contract required under art. 6573a, § 22, R.C.S., to be in writing, and therefore unenforceable under sec. 22 of the Statute of Frauds.

Points 2 and 3 are sustained.

Point 4 asserts Underwood was not the procuring cause of the sale by Parks to Sellmeyer who looked at the property as a result of his sister-in-law telling him the place was for sale because his sister-in-law was not acting on behalf of Underwood and also Sellmeyer had no notice that Underwood or any other agent was in any wise involved.

A review of the material testimony shows that Mrs. Scharf was a saleswoman employed by Underwood, and in that capacity showed the Parks property to a Mrs. Gor-

don Darnell who did not buy the house. However Mrs. Darnell did later call Mrs. Scharf and told her she thought the Sellmeyers would be interested in the Parks property. Mrs. Scharf, Underwood's employee, then called Mrs. Melvin Sellmeyer by phone and told her about the Parks property. Mrs. Melvin Sellmeyer then advised her brother-in-law, Alfred Sellmeyer, about the property. The record also shows Mrs. Scharf testified she learned from Mrs. Darnell that Alfred Sellmeyer would be interested in the Parks property. Mrs. Scharf also testified that Mrs. Melvin Sellmeyer had agreed to tell Alfred Sellmeyer about the house when he came back to town the following Saturday, March 29.

Alfred Sellmeyer testified he first learned about the property March 29th from his sister-in-law; that he thereafter visited or saw Mrs. Parks and discussed the purchase of the house. At the time Mrs. Parks priced the house to him at $22,500, the price he thereafter on March 30, 1952, agreed to pay for the property. He further testified that on the first visit he saw two "For Sale" signs in the yard. It is undisputed that Sellmeyer first looked at the property on Saturday March 29, 1952, the last day of the written exclusive listing contract, and again the next day, March 30, 1952, the day after the written exclusive contract had expired under its express terms. The prospect told Parks that no agent was involved. That thereafter when Parks returned home he and his wife priced the property at $22,500 and they signed the contract to sell the property for that price at that time, and accepted Sellmeyer's check for $500 payable to them as a deposit on the purchase price. The $500 check was introduced in evidence and showed to have been endorsed by Mr. and Mrs. Parks to a Title Company and that the sale was thereafter completed by the Parks to Alfred Sellmeyer under such $22,500 contract.

In our opinion this point raises two questions, to wit: (1) Whether or not Underwood was the procuring cause of the sale, and if so, (2) whether it was necessary, under the wording of the contract, to "sell" the property within the 45-day period.

The evidence shows that the agent did no more than get word to a prospect that the Parks property was for sale. He again visited the property that afternoon at which time he saw and talked to Mrs. Parks. He says he told her he had talked to his sister-in-law, who had told him about the house. It is also undisputed that Mrs. Parks priced the property to Sellmeyer after he had so advised her that no agent was involved.

■ Under such record we are of the opinion that the question of procuring cause became one of law against appellee since there is no sufficient unbroken chain of causation necessary to satisfy the requirements of procuring cause, to wit, that Underwood's acts in their natural and continuous sequence, unbroken by any new independent cause, resulted in the sale, and without which acts or efforts of the broker the sale would not have been made.

■. It is also the rule that an "exclusive agent" or "exclusive agency" to sell does not prohibit the owner from selling his property, and the agent is not entitled to a commission on a sale made by the owner. Harcourt v. Stockton Food Products, 113 Cal.App.2d 901, 249 P.2d 30–33; Louis Schlesinger Co. v. Rice, 4 N.J. 169, 72 A.2d 197; Torrey & Dean v. Coyle, 138 Or. 509, 7 P.2d 561–562.

■ It is further our opinion that the wording of the contract limited the time in which Underwood, in order to earn his commission, could sell the property. It follows that the property was not sold to Sellmeyer within the time limit placed in the contract by the parties, "sell" meaning to secure a binding contract of sale within the 45-day period.

Underwood not having sold the property within the limited period provided for in the contract he himself prepared, he was not entitled to the contract commission. The trial court's judgment is therefore reversed and here rendered for appellants against Underwood.

■ No assignments of error are briefed against appellee Sellmeyer, and the judgment in his favor must be affirmed.

Reversed and rendered as against Underwood, but affirmed as to Alfred E. Sellmeyer.

DIXON, C. J., concurs by separate opinion.

YOUNG, J., dissents.

DIXON, Chief Justice (concurring).

Appellants' second point is that appellee's written exclusive contract, which authorized him as agent *to sell* the property within 45 days, had expired before the sale was made to Sellmeyer; hence the said contract afforded no basis for recovery of a real estate commission by appellee, though appellee may have started negotiations with Sellmeyer prior to the expiration date.

There are conflicting decisions in the various jurisdictions on the law question raised by appellants' second point. They are listed and annotated in 26 A.L.R. 784–800 and 27 A.L.R.2d 1361–1373. The question is also discussed in 8 Am.Jur. 1086. In some jurisdictions, though not in all, the decision will be determined by the particular wording of the listing contract. For example if the contract merely obligates the real estate agent to "find a purchaser," and he does so before the expiration of the contract, he is entitled to his commission, though the sale itself is not consummated until after the expiration date. But if the contract by its terms binds the agent "to sell" the property, the agreement to buy and sell must be reached before the expiration of the listing contract, otherwise the agent is not entitled to a commission though he may have begun negotiations with the eventual purchaser before the expiration. In other instances it has been held that when there is a continuity in the negotiations begun before the expiration date, with no break or delay, which negotiations lead to a sale soon after the expiration date, the agent is entitled to a commission

The majority rule in the absence of fraud by the owner apparently is this: When by the terms of the contract the agent's right to sell is limited to a certain time, he is not entitled to commissions if no sale is effected within that time, though the owner after the expiration date sells to a person with whom the agent had been negotiating. The Texas rule seems to follow the majority holding. Garonzik v. Green, Tex.Civ.App., 275 S.W. 184; Fulton Iron Works Co. v. Wolfe, Tex.Civ.App., 3 S.W.2d 118; Daltex Cattle Co. v. Hill, Tex.Civ.App., 43 S.W.2d 605 (dism.). In my opinion because of the wording of the contract in the instant case we properly sustained appellants' second point.

Appellants' third point is that the verbal agreement, though made during the 45-day period of the written listing, was insufficient to meet the requirements of art. 6573a, § 22, V.A.C.S.

It has been held that an oral extension of a written contract, when made prior to the expiration of the written contract, is not violative of the Statute of Frauds. Bullis v. Noyes, 75 Tex. 540, 12 S.W. 397; Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 164 S.W.2d 488. But the rule is not applicable if the oral extension has the effect of changing any of the material terms of the original contract; for then the oral agreement is not merely an extension of the original contract—it is itself a new and different contract and is unenforceable if it comes within the class of contracts required by the statute to be in writing. Bullis v. Noyes, supra; Gilbert v. Texas Co., Tex. Civ.App., 218 S.W.2d 906 at pages 943–944; Robertson v. Melton, 131 Tex. 325, 115 S. W.2d 624.

In my opinion the oral agreement in this case, as shown by the testimony of appellee Underwood himself, did make material changes in the listing contract. It was a new and different contract in the following particulars: (1) It was not an exclusive contract; (2) it was for an indefinite period of time; and (3) it bound the agent only to "secure a purchaser," whereas the written agreement bound the agent "to sell". Since it was a new contract it came within

the terms of the statute, and will not furnish a basis for recovery of judgment by appellee.

It is true that Underwood also testified that after the sale to Sellmeyer, Mrs. Parks told him she would discuss the matter with Mr. Parks, and if Underwood had anything to do with procuring "this client," Underwood would receive his five percent commission. However this conversation took place after the expiration of the written contract, so even under the rule for which appellee contends, it could not have operated as a valid oral renewal and extension of the written agreement.

There are authorities which hold that in cases of fraud, Matthewson v. Fluhman, Tex.Com.App., 41 S.W.2d 204, estoppel, Dickson v. Kelley, Tex.Civ.App., 193 S.W. 2d 256, or waiver, 27 A.L.R.2d 1355; 140 A.L.R. 1019, a broker may recover his commission on a sale made after the termination of his written listing contract. I do not disagree with the holdings in those cases. But under the circumstances present in this case I am of the opinion that such holdings are not applicable. A review of the record fails to disclose any bad faith on the part of the appellants Homer Parks and his wife Mrs. Hallie Parks, or any conduct on their part that would support such pleas, or would result in a wrong to appellee as the court had in mind in Minchen v. Vernor's Ginger Ale Co., Tex.Civ.App., 198 S. W.2d 613.

This appeal has presented questions which I think are close, and which have been difficult to decide. But after a further consideration of the record I have concluded that I should concur, and I do concur in reversing and rendering the judgment of the trial court as to appellee Billy Underwood and affirming the judgment as to appellee Sellmeyer.

YOUNG, Justice (dissenting).

It may be that where, as here, a specified time is set in which to effect a sale, the stipulation as to time must be complied with to entitle the land broker to his commission. 7 Tex.Jur., Sec. 35, p. 419; 27 A.L.R.2d 1865. But I feel certain that this oral extension made prior to expiration of the written listing, is not such an agreement as is required to be in writing under terms of section 22, art. 6573a, V.A.C.S.; nor is it unenforceable perforce of art. 3995, V.A. C.S.,—Statute of Frauds.

Section 22, supra, reads in part: "No action shall be brought in any court in this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreement upon which action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged * * *." The oral agreement prohibited by the statute must amount to a *new contract;* Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624, 118 A.L.R. 1505; and thus the parties to a contract may change the method of payment or waive strict performance of the medium of payment without violating the law. Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 164 S.W.2d 488. It was the testimony of both Mrs. Parks and Underwood that the oral agreement was in effect an extension of the written listing; only the exclusive 45-day feature being eliminated; the latter testifying relative thereto that: "On the occasion that we discussed the exclusive, we agreed that it ran out in a week or two and she said even after the exclusive was to expire, that at that time it would be on a nonexclusive basis, that she would pay me for my prospects, or any sale or any client that I had produced thereby, through my efforts, and I would be paid my five percent commission. * * * After the discussion she said, 'Well, I will discuss this with Mr. Parks, and if there is—if you have anything to do with procuring this client, I will—you will receive your five percent commission.'" Mrs. Parks stated on the subject: "Q. At that time, during those conversations, didn't you tell Mr. Underwood that if he would continue his efforts to sell the property, that anyone who bought the property as a result of his efforts, you would pay him a commission on the sale of the property? A. No, not to continue

the sale of the property after the exclusive was up, and other agents, I told Mr. Underwood that it was open, that I, myself, was going to try to sell it and that he had had his time and he didn't sell it; that was past, that was up, and after this exclusive was gone and up, another agent could sell it, *then if he should sell it, I would certainly give him a commission."* (Emphasis mine.)

Here we have the same property listed, same parties, same 5% commission and sales price, with the single change, orally made, that the listing continue on a nonexclusive basis. The statute of frauds does not require that the writing specify anything relative to the agency, whether exclusive or not, an oral modification in such respect not constituting a violation. Gulf Production Co. v. Continental Oil Co., supra. Furthermore, in reliance on the oral extension, appellee continued his efforts to sell the property, advertising same in daily paper on March 30, keeping the house "open" on that day to show prospective purchasers; the sale to Sellmeyer, begun during life of the exclusive listing, having been consummated on said March 30. "Where party has so far performed oral contract that it would be perpetrating fraud to allow the other party to set up statute of frauds, equity will enforce contract. (Rev.St.1925, art. 3995)." Matthewson v. Fluhman, Tex.Com.App., 41 S.W.2d 204, syl. 1. "Where oral contract is executed on one side and nothing remains but payment of consideration, consideration may be recovered notwithstanding statute of frauds. Vernon's Ann.Civ.St. art. 3995." Machann v. Machann, Tex.Civ. App., 269 S.W.2d 826, syl. 3. "Oral modification of contract within the statute of frauds will be enforced where the party relying on the oral agreement has performed his undertaking thereunder so that a refusal to enforce the modified agreement would result in a wrong to the party who acted in reliance thereon. Vernon's Ann.Civ.St. art. 3995, subd. 4." Minchen v. Vernor's Ginger Ale Co., Tex.Civ.App., 198 S.W.2d 613, syl. 5. See also First National Bank in Dallas v. Trinity Patrick Lodge No. 7, Tex.Civ. App., 238 S.W.2d 576.

And even under Associate Justice CRAMER'S statement of the material facts, a jury question resulted, answered affirmatively by them, of whether appellee was the procuring cause of this sale.

The judgment under review should be affirmed.